364 A.2d 425
COMMONWEALTH of Pennsylvania
v.
Charles DAVISON, Appellant.

Superior Court of Pennsylvania.
Sept. 27, 1976.

John W. Packel, Asst. Public Defender, Chief, Appeals Div., Philadelphia, for appellant.

Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

The sole meritorious claim in the instant case is whether the lower court failed to clarify the jury's confusion concerning an important issue in appellant's trial, as reflected in the jury's questions to the court.[1]

On June 6, 1974, a cashier at the Penn Fruit store at Broad and Wingohocking Streets, Philadelphia, noticed a young girl crying, near the cashier's register. The cashier asked the girl, nine-year-old Antoinette Key, whether

---

1. Appellant raises two additional contentions which have no merit: First, he contends that the Commonwealth failed to produce sufficient evidence on the charge of corruption of the morals of a minor to prove that the morals of the complainant were corrupted or changed in any way. The claim is without merit. See, e. g., *Commonwealth v. Dulacy,* 204 Pa.Super. 163, 203 A.2d 587 (1964). Second, appellant contends that because he was not charged with indecent exposure in the criminal complaint, but was indicted for that offense, he was thereby denied a preliminary hearing on that charge. Again, the claim has no merit. See Rule 213(a)(5), Pa.R.Crim.P., which provides that an indictment must contain "a plain and concise statement of the essential elements of the offense substantially the same as or cognate to the offense alleged in the complaint . . . ." We find that the elements of indecent assault were sufficiently related to those crimes charged in the complaint to come within Rule 213(a)(5).

anything was wrong. The child stated that a man had hurt her. The cashier called over the store manager, Robert Fiorelli, to take care of the child.

The girl told Fiorelli that a man had raped her in the men's room located at the rear of the store, facilities used by employees and customers. He took the girl around the store in an effort to locate the perpetrator. She picked out the appellant from a group of about six people walking by at that time. Appellant was employed as a security guard by Penn Fruit, but was not on duty on that day.

Officer John Ferry, a member of the Philadelphia Police Department, arrived at the store shortly after the incident was reported. He arrested the appellant and transported him to the Northwest Detective Division. Appellant was held on charges of rape,[2] statutory rape,[3] indecent assault,[4] and corruption of the morals of a minor.[5] He received a preliminary hearing on June 13, 1974, and was held over for the grand jury at that time. Subsequently, the grand jury indicted appellant on charges of rape, statutory rape, and corruption; the jury rejected the bill charging appellant with indecent assault, and instead, indicted him on a charge of indecent exposure.[6] Following the denial of pretrial motions, trial began on April 8, 1975.

At trial, the complaining witness gave the following account: on the evening of the incident, she went to the store to purchase groceries for a neighbor. Unable to find certain items, she asked appellant to assist her. After he helped her find some of the items, he forced her

2. The Crimes Code, 1972, Dec. 6, P.L. 1482, No. 334, § 1; 18 Pa. C.S. § 3121.

3. The Crimes Code, supra; 18 Pa.C.S. § 3123.

4. The Crimes Code, supra; 18 Pa.C.S. § 3126.

5. The Crimes Code, supra; 18 Pa.C.S. § 3125.

6. The Crimes Code, supra; 18 Pa.C.S. § 3127.

into the men's room. Once inside, he pulled down his pants, pulled her onto his lap and inserted his penis into her "back part."

In addition to the girl's testimony, a resident physician in obstetrics and gynecology at Philadelphia General Hospital stated that his examination of the child on June 6, revealed "dry wet discharge" on her vulva, but that no spermatozoa were present. He also found no signs of trauma in either the vaginal or rectal area. One of the investigating detectives reported that police laboratory analysis of appellant's undershorts showed no signs of semen.

After the Commonwealth rested, counsel for appellant demurred to the evidence and made a motion pursuant to *Commonwealth v. Bighum,* 452 Pa. 554, 307 A.2d 255 (1973), to prevent the Commonwealth's use of appellant's prior conviction for rape for purposes of impeachment. The court denied the demurrer, but granted the *Bighum* motion. The appellant, however, did not testify. His defense consisted of the testimony of the investigating detective who had taken a statement from the complaining witness on the night of the incident. The child had given an account of what had occurred, different from her trial testimony: she had told the detective that she had left her shopping cart to go to the bathroom; that upon exiting, she saw appellant seated near the lady's room; that he took her into the employee's locker room and then into the men's room; and that, while on his knees, he "put his dick in my cock."

The jury found appellant guilty of corruption and indecent exposure, but acquitted him of rape and statutory rape. After post trial motions were denied, the court sentenced appellant to a term of imprisonment of 2 to 5 years on the charge of corruption, and to a concurrent term of 1 to 2 years on the charge of indecent exposure. This appeal followed.

Appellant contends that he was prejudiced by the court's failure to clarify certain questions raised by the jury that arose during their deliberation.

Appellant was charged in indictment number 1555 with corruption, specifically, by the act of rape. The court's charge on that bill of indictment was correct: "I call your attention that with respect to the charges of corruption of minors, the minor is alleged to be Antoinette Key, and that she is nine years of age and that the act involved for which [appellant] is charged is rape; that is, the rape of Antoinette Key. Nine years old is corruption of a minor. That is the charge."

Subsequently, however, after the jury had been deliberating, the foreman submitted two questions to the court and the following took place: [By the foreman]: We would like to have a little clarification of the two charges in relation to one another; one, corruption of minors, and if the two charges have any relationship to the second charge of indecent exposure.

"THE COURT: First of all, each charge stands separately so that you must determine that each element of an offense has been made out. There is no direct connection between corruption of minors and indecent exposure.

"You have to listen to the definition of each and see whether or not the facts as you will find them or have found them apply. . . .

". . . Do you have any question as to what the definition of indecent exposure is in and of itself and do you want to hear it again? Is that the question as well as whether there is—

"JUROR NUMBER 11: I would like to hear it again, Your Honor.

"THE COURT: All right. I am doing nothing more than reading from the statute itself.

18

"Indecent exposure: A person commits indecent exposure if for the purpose of arousing or gratifying sexual desire of himself he exposes his genitals under circumstances in which he knows his conduct is likely to cause affront or alarm.

"Did you all hear that?

"(Whereupon, all members of the jury indicated in the affirmative.)

"THE COURT: You simply wanted to hear the two different counts of corruption of minors. Each count is an allegation of a separate crime.

"Count 1 states that on or about June 6, 1974, in Philadelphia County, [appellant] being of the age of eighteen years and upwards, by an act unlawfully did corrupt or tend to corrupt the morals of a child under the age of eighteen years.

"The second count says that the same person, same day and year, in Philadelphia County, being of the age of eighteen years and upwards, did aid, abet, entice or encourage a child under the age of eighteen years in the commission of a crime.

"Does that answer your question?

"(Whereupon, all members of the jury indicated in the affirmative.)

"[Appellant's counsel]: May we see you at side bar, Your Honor?

"THE COURT: Yes, come to chambers.

"(Whereupon, the following conversation transpired.)

.  .  .

"[Appellant's counsel] : I would just ask that you read again the rest of the bill in that the act which is alleged in the bill is the act of rape.

"[District Attorney]: That is not what they asked for. They asked for a definition, which is what you gave them.

"THE COURT: Your point is well made and I will give it.

"[District Attorney]: Note my exception. It is going beyond the scope.

"THE COURT: It is beyond what they did ask me. I did read it from the indictment. Maybe that was error.

"[District Attorney]: You were reading from the bill of indictment.

"THE COURT: All I did was read the statute interjecting a named person and a date, which was my intention. In other words, it is not exactly the bill of indictment. I left out the word 'unlawfully' which is in the bill of indictment which I don't deem to be the statutory definition.

"The legal issue raised is whether if they did not believe the defendant committed rape—

"[District Attorney]—you can't guess at what they want. You can only answer what they ask. To do more is to go beyond your charge.

"THE COURT: . . . your argument is persuasive and I reverse myself.

"[Appellant's counsel]: Note my exception.

"THE COURT: Fine.

"(End of conversation in chambers. . . .)"

■ According to appellant, it was the court's responsibility to eliminate the jury's confusion.[7] As is clear

7. The appellant argues that the fact that the jury acquitted him of rape and convicted him of corruption, when the corrupting act was rape, is indication of confusion. On one hand, as discussed, infra, the jury's questions show that the jurors were confused. On the other hand, an inconsistent verdict is not a basis for reversal of a conviction. See, e. g., *Dunn v. United States,* 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932); *United States v. Maybury,* 274 F.2d 899 (2d Cir.1960); *Commonwealth v. Carter,* 444 Pa. 405, 282 A.2d 375 (1971); *Commonwealth v. Harris,* 239 Pa.Super. 603, 360 A.2d 728 (filed April 22, 1976) (Concurring opinion by Hoffman, J.)

from the transcript quoted above, counsel for appellant properly preserved that issue.

In a case dealing with the administration of federal criminal justice, the United States Supreme Court, per Frankfurter, J., made the following observations concerning the trial court's responsibility to assist the jury: " 'In a trial by jury in a federal court, the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law.' *Quercia v. United States*, 289 U.S. 466, 469, 53 S.Ct. 698, 699, 77 L.Ed. 1321. 'The influence of the trial judge on the jury is necessarily and properly of great weight,' *Starr v. United States*, 153 U. S. 614, 626, 14 S.Ct. 919, 923, 38 L.Ed. 841, and jurors are ever watchful of the words that fall from him. Particularly in a criminal trial, the judge's last word is apt to be the decisive word. If it is a specific ruling on a vital issue and misleading, the error is not cured by a prior unexceptionable and unilluminating charge. . . .

"Discharge of the jury's responsibility for drawing appropriate conclusions from the testimony depended on discharge of the judge's responsibility to give the jury the required guidance by a lucid statement of the relevant legal criteria. When a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy. . . ." *Bollenbach v. United States*, 326 U.S. 607, 612–13, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946).

Similarly, we stated in *Commonwealth v. Zeger*, 200 Pa.Super. 92, 97–98, 186 A.2d 922, 925 (1962) (opinion by Watkins, J., now P. J.) that "[t]he duty of a trial judge has clearly been stated as being to clarify the issues so that the jury may comprehend the questions they are to decide and not only to state to the jury correct principles of law applicable to the pending case and to endeavor to make such principles understandable in plain language, but also the duty is imposed upon the judge to

assist the jury in applying the principles to the issues presented to them for determination. *Archer v. Pennsylvania Railroad Co.*, 166 Pa.Super. 538, 72 A.2d 609 (1950)." See, also, ABA Project on Standards for Criminal Justice, Standards Relating to Trial by Jury, § 5.3, Approved Draft.

■ The colloquy quoted above makes clear that the jury was confused about the relationship between the two counts of corruption and the charge of indecent exposure. The Commonwealth argues that appellant is attempting to have us review an inconsistent jury verdict —a review beyond our judicial authority. See n. 7, supra. Had the appellant been charged only with corruption and rape, and had the jury brought in a verdict of guilty on corruption and not guilty on rape, the Commonwealth would be correct in suggesting that we should not review an apparently inconsistent verdict. See *United States v. Maybury*, supra. But this is not what appellant asks us to review; rather, he complains that the court's answer to the jury's question led them to believe that the jury might convict appellant of corruption even if the jury believed that he did not commit rape. We decided in *Commonwealth v. Lambert*, 226 Pa.Super. 41, 313 A. 2d 300 (1973), that if an accused is charged with corruption by one act, and the Commonwealth does not prove that act, but proves some other act, the conviction for corruption cannot stand.[8] Thus, the Commonwealth could not charge corruption by rape and prove corruption by indecent exposure. Section 3127 is broad, leaving an accused liable for many, varied acts; compare *Commonwealth v. Collin*, 233 Pa.Super. 300, 305, 335 A. 2d 383, 386 (1975) (dissenting opinion by Hoffman, J.) with *Commonwealth v. Meszaros*, 194 Pa.Super. 462, 168

---

8. A similar issue was raised in *Commonwealth v. Brown*, 234 Pa. Super. 119, 338 A.2d 659 (1975). The Majority, however, held that the issue had been waived. But see, *Commonwealth v. Brown*, supra, (dissenting opinion by Hoffman, J.)

A.2d 781 (1961); *Commonwealth v. Chapman,* 186 Pa. Super. 632, 142 A.2d 469 (1958); nonetheless, once an act is charged, due process prevents the Commonwealth from substituting another act as the corrupting one. *Commonwealth v. Lambert,* supra.

In the instant case, the jury's question should have alerted the court to the possibility that the jury would convict the appellant for corrupting the morals of the victim by the act of indecent exposure. Of course, the Commonwealth might have charged appellant with corrupting by the general course of conduct in which he engaged and would, therefore, have been free to prove corrupting by the act of indecent exposure. It did not do so. Cf. *Commonwealth v. Lambert,* supra, 226 Pa.Super. at 44, 313 A.2d at 301: "By specifically charging the manner by which appellant was alleged to have corrupted the morals of these minors, the Commonwealth was required to prove that appellant did furnish them with dangerous drugs. . . . Having failed to do so, the Commonwealth did not prove the offense as charged in the indictment, and appellant's motion in arrest of judgment should have been granted." Thus, once the court was aware that the jury might find appellant guilty for an act for which he was not charged, the court had an obligation to eliminate the jury's confusion. Initially, the court agreed to instruct the jury on that point, but acquiesced when the district attorney argued that such an instruction would be beyond the limits of the foreman's question. Whether the district attorney was technically correct or not, we must be mindful that jurors are not skilled in the law. Thus, viewed in a common sense manner, the jury's question obviously alerted the court to confusion concerning a matter of critical importance. Failure to instruct further on that point was error.

Therefore, we reverse the judgment of sentence on the charge of corruption of the morals of a minor and re-

mand for retrial on that charge only. In addition, we remand for resentencing, on the charge of indecent exposure. *Commonwealth v. Lockhart,* 223 Pa.Super. 60, 296 A.2d 883 (1972).

VAN der VOORT, J., concurs in the result.

PRICE, J., dissents.