371 A.2d 1376

**COMMONWEALTH of Pennsylvania**

v.

**George J. STEGMAIER, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 13, 1976.

Decided March 31, 1977.

160

Richard R. Fink, Chief Public Defender, Doylestown, with him James A. Downey, III, and Nathan Criste, Assistant Public Defenders, Doylestown, for appellant.

Peter F. Schenck, Assistant District Attorney, and Stephen B. Harris, First Assistant District Attorney, Doylestown, submitted a brief for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

Appellant, George Stegmaier, was convicted by a jury of burglary, possession of burglary tools, and two counts of conspiracy. Post-verdict motions were denied and appellant was sentenced to a term of imprisonment of one to three years. This appeal followed.

In the early morning hours of March 5, 1971, the police received a report of a burglary in progress at the Morrisville Bowling Alleys. When the police arrived at the scene they entered the building through an unlocked rear door and immediately observed indications of a burglary and an attempted theft. Articles were stacked near the rear door, pry marks were visible on the office safe, drawers and closets had been ransacked, and various tools were recovered from the area of the safe. Upon further investigation the police discovered appellant and Walter and Gregory Tanchuk, hiding in an open space above the building's false ceiling.[1]

1. Appellant testified at trial that he had been summoned to the bowling alley by one of the Tanchuks, and that he entered the unlocked bowling alley without any criminal purpose in mind. Ac-

Appellant has advanced several assignments of alleged trial errors. However, since we conclude that a portion of the trial court's charge to the jury was clearly in error and compels a new trial, we need not address the other issues presented.[2]

During the course of his charge to the jury, the trial judge stated: "Under the facts of the case, it would defy reason and it would be improper to return a verdict of guilty as to one of these offenses and not to all. So, your verdict will be guilty or not guilty as to all charges under the peculiar circumstances of this case." In so instructing the jury the lower court improperly usurped the function of the jury.

Apparently, the trial judge was of the opinion that, on the facts of this case, an acquittal on one or more of the charges, and a finding of guilty on the others, would be logically inconsistent. While the lower court's desire for avoiding a possibly inconsistent verdict is understandable, we believe this concern was misfounded and did not warrant the instruction at issue. It is firmly established that consistent verdicts in criminal cases are not required, provided there is sufficient evidence to support the conviction the jury has returned. See, e. g., *Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932); *Commonwealth v. Strand*, 464 Pa. 544, 347 A.2d 675 (1975); *Commonwealth v. Jackson*, 230 Pa.Super. 386, 326 A.2d 623 (1974). The rationale underlying this principle was well-stated by Judge Friendly in *United States v. Carbone*, 378 F.2d 420, 422 (2d Cir. 1967):

"The very fact that the jury may have acquitted of one or more counts in a multicount indictment because of a belief

cording to appellant, the police arrived immediately after he had arrived, and he hid because he realized he had no business being on the premises. Walter Tanchuk corroborated this story.

**2.** Appellant also contends that the lower court erred in the following instances: (1) positioning a sheriff behind the witness stand while appellant testified; (2) instructing the jury on accomplice testimony in behalf of the defense; and (3) failing to grant a mistrial because of the alleged improper comments made by the district attorney in his closing argument to the jury.

that the counts on which it was convicted will provide sufficient punishment . . ., forbids allowing the acquittal to upset or even to affect the simultaneous conviction. We have repeatedly so held . . . . Indeed, if the rule were otherwise the Government would be entitled to have the jury warned that an acquittal on some counts might undermine a guilty verdict on others—almost the opposite of the standard instruction, which is obviously beneficial to criminal defendants, and which the judge gave here without objection. It is true, as both Judge Hand and Mr. Justice Holmes recognized . . . that allowing inconsistent verdicts in criminal trials runs the risk that an occasional conviction may have been the result of compromise. But the advantage of leaving the jury free to exercise its historic power of lenity has been correctly thought to outweigh that danger." [Citations omitted.]

Instantly, the lower court's charge requiring the jury to render a verdict of guilty or not guilty as to all of the charges improperly impaired the jury's absolute right to be the final arbiter of the crime or crimes, if any, of which appellant was guilty. While we may share the lower court's difficulty in logically reconciling a verdict which found appellant guilty on some charges and not guilty on others, the fact remains that this determination is vested solely in the jury.

"To the jury belongs the power to err, not alone in gullibility but also deliberately. A most important portion of the administration of our system of criminal justice is the fact that the jury in subtle ways may temper the rigidity of our criminal code in the application of the letter of the law to particular cases and may perhaps thereby mitigate the rigors of the law." *Commonwealth v. Franklin*, 172 Pa.Super. 152, 193, 92 A.2d 272, 292 (1952). See also *Commonwealth v. Parrotto*, 189 Pa.Super. 415, 150 A.2d 396 (1959).

Judgment of sentence reversed and the case is remanded for a new trial.