384 A.2d 974

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Leonard J. MADER.**

Superior Court of Pennsylvania.

Submitted Nov. 8, 1976.

Decided April 13, 1978.

Donald E. Lewis, Assistant District Attorney, and Ballard F. Smith, Jr., District Attorney, Meadville, for Commonwealth, appellant.

R. Charles Thomas, Meadville, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

Following a jury trial on October 30, 1974, appellee was convicted of conspiracy[1] and delivery of a controlled substance.[2] Motions for a new trial and in arrest of judgment were filed and argued March 7, 1975. Reargument was granted and held September 22, 1975. On November 26, 1975, the lower court granted a new trial on the conspiracy conviction and granted arrest of judgment and discharged appellee on the delivery charge. The Commonwealth has appealed from that disposition. We reverse the order of the court below, reinstate the guilty verdicts and remand for sentencing.

We initially note that the Commonwealth's appeal in this case is properly before us. The question presented is purely one of law, *see Commonwealth v. Blevins*, 453 Pa.

1. 18 Pa.C.S. § 903.

2. Act of April 14, 1972, P.L. 233, No. 64, § 13(a)(30) [35 P.S. § 780–113(a)(30)].

481, 309 A.2d 421 (1973), and the lower court's order would terminate prosecution on the delivery charge. *See Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963); *Commonwealth v. Deren*, 233 Pa.Super. 373, 337 A.2d 600 (1975).

The issue presented in this appeal is whether appellant has standing to challenge an illegal search which resulted in the seizure of a quantity of marijuana which was introduced as evidence against him at trial. Two other prosecutions stemmed from the seizure of the marijuana: *Commonwealth v. Robosson*, No. 248 of 1974 and *Commonwealth v. Friedlich*, No. 247 of 1974.[3] Robosson and Friedlich were convicted of possession with intent to deliver and simple possession respectively. These convictions were reversed by Judge F. Joseph Thomas, who found the search warrant which uncovered the marijuana to be defective in that the affidavit in support of its issuance failed to provide probable cause. The lower court in the instant case found that appellant had standing to assert the illegality of the search, that suppression of the marijuana was thus required, and that suppression dictated the previously mentioned disposition.

The factual background of this matter is as follows. In April of 1974 appellee transported approximately four pounds of marijuana from State College, Pennsylvania, to the campus of Allegheny College at Meadville, Pennsylvania. Prior to appellee's arrival, local police had been alerted that some marijuana was to be brought onto the campus. John Michael Spanogians and Joseph Alan Wos, named as co-conspirators in the indictment against appellee, became aware that the police had been warned of the impending delivery. This led to considerable controversy, upon appellee's arrival at Allegheny, as to where the marijuana should be temporarily secreted. The immediate solution to this dilemma was a hall closet in Baldwin Hall, a dormitory on the college campus, where the cache was kept until Friday, April 18. That night, the marijuana was removed from the closet by two other students and taken to a location near Robertson

---

3. These cases are designated by their Crawford County term numbers.

Field, a recreation area belonging to the college. On Saturday, April 19, the marijuana was returned to a location on the campus. A search pursuant to a warrant of the room of Donald Friedlich in Edwards House, on the Allegheny campus, was conducted on Tuesday, April 23, 1974. The marijuana produced by that search was introduced at appellee's trial. Appellee had remained on the Allegheny campus until April 20, when he returned to State College.

The specific basis upon which the lower court found that appellee had standing to challenge the search herein is unclear. The court quotes the summary of the law in this area found in *Commonwealth v. Treftz*, 465 Pa. 614, 621–22, 351 A.2d 265, 268 (1976).

"The law governing standing to attack the validity of a search and seizure has consistently adhered to the principle that constitutional rights under the fourth amendment are personal in nature. *Brown v. United States*, 411 U.S. 223, 230, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); *United States v. Wilcox*, 357 F.Supp. 514, 517 (E.D.Pa.1973); *Commonwealth v. Ross*, 452 Pa. 500, 505, 307 A.2d 898, 900 (1973). A defendant solely aggrieved by virtue of the introduction of damaging evidence will be denied standing. *Alderman v. United States*, 394 U.S. 165, 171, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); *Jones v. United States*, 362 U.S. 257, 261, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *United States v. Maroney*, 220 F.Supp. 801, 806 (W.D.Pa. 1963); *Commonwealth v. Raymond*, 412 Pa. 194, 201, 194 A.2d 150, 153 (1963).

The United States Supreme Court in *Brown, supra*, has outlined the perimeters of what shall be deemed essential to a finding that the criminal defendant's *own* personal rights lay at the core of the improper and proscribed governmental action, thereby justifying the invocation of the exclusionary rule. . . .

Under *Brown*, a defendant must allege one of the following 'personal' interests in order to establish standing: (1) his presence on the premises at the time of the search and seizure; (footnote omitted) (2) a possessory

interest in the evidence improperly seized; (footnote omitted) (3) that the offense charged include as an essential element of the prosecution's case, the element of possession at the time of the contested search and seizure; (footnote omitted) or, (4) a proprietory [sic] or possessory interest in the searched premises."

In its opinion, the lower court states as follows:

"We hold that an essential element of the crime of unlawful delivery is possession. Since Mader had not abandoned his marijuana but had allowed it to come into possession of others to hold and hide for him until police snoopers were no longer a threat and then have his frineds [sic] sell the 'pot' and forward him a share of the proceeds, he still has a 'possessory interest' in the seized marijuana.

Mader thus met one of the four 'personal' interests set forth in *Brown* to establish standing to object to the search."

■ There are two "personal" interests delineated in *Brown v. United States, supra,* on which the trial court might have relied. The court first mentions that possession is an element of the crime of unlawful delivery. This conclusion, whether true or not, is devoid of significance under the circumstances. In *Commonwealth v. Treftz, supra,* our supreme court stated that, under *Brown,* a criminal defendant has standing to challenge a search when "the offense charged include[s] as an essential element of the prosecution's case, the element of *possession at the time of the contested search and seizure.*" 465 Pa. at 622, 351 A.2d at 268 (emphasis added). Neither of the offenses with which appellee was charged comprehended the element of possession at the time of the search. Rather both the Commonwealth and appellee acknowledged that he returned to State College three days before the police entered Friedlich's room. This avenue to standing under *Brown* was thus clearly foreclosed.

The court below also found that appellee retained a "possessory interest" in the marijuana at the time of the search. This conclusion, if correct, would provide standing for appel-

lee under the second category set forth in *Brown*. According to the trial court's summary, "[t]he testimony indicated that Mader originally brought the marijuana to use, give away or sell, but when things got hot on the campus he left without it but under the impression that some of his friends (Robosson and Friedlich), who were playing hide and seek with it, would eventually sell it and forward him at least some of the proceeds."

 Appellee relies on the "possessory interest" theory in his brief to this court. He points to the trial testimony of Commonwealth witness Wos, who stated that appellee telephoned him and inquired when he (appellee) would be sent some money. It is contended that appellee's continuing expectation of some monetary compensation for the marijuana and the fact that he kept himself apprised of its whereabouts constitute a sufficient "possessory interest" under *Brown v. United States, supra,* and the Pennsylvania cases. It is clear that both appellee and the lower court have misconstrued this concept.

In *Brown v. United States, supra,* the petitioners were convicted of the federal crimes of transporting stolen goods and conspiracy to transport stolen goods. Brown was the manager of a warehouse in Cincinnati, Ohio, and his co-defendant Smith was a truck driver for the company which owned the warehouse. Brown and Smith stole goods from the warehouse and transported them across state lines to Knuckles' store in Manchester, Kentucky, where they were "sold" to co-conspirator Knuckles for cash. When Knuckles' store was searched, pursuant to a warrant, Knuckles was present but Brown and Smith were in custody in Ohio. The warrant was defective, and Brown and Smith sought to challenge the legality of the search in their suppression motion.

The Court in *Brown* held that the petitioners' suppression motion had been properly denied for lack of standing, pointing out that (1) "the Government's case against petitioners does not depend on petitioners' possession of the seized

evidence at the time of the contested search and seizure.[4] (footnote omitted)." 411 U.S. at 228, 93 S.Ct. at 1569, and (2) "[p]etitioners . . . failed to allege any *legitimate* interest of any kind in the premises searched or the merchandise seized." 411 U.S. at 229, 93 S.Ct. at 1569 (emphasis added).

The Supreme Court's concept of a "proprietary interest" is further illuminated in a footnote which states:

"Petitioners now contend that they had a partnership 'property interest' in or 'constructive possession' of the stolen goods found at Knuckles' store, as a conspiracy is a 'partnership in crime.' Even if the petitioners had not already 'sold' the merchandise to Knuckles, their 'property interest' was *totally illegitimate.*" (emphasis added). *Brown v. United States, supra* at 230 n. 4, 93 S.Ct. at 1569.

In the instant case, appellee left the marijuana with persons on the Allegheny campus and returned to State College. He did not retain any control over its sale or disposition and had only an indefinite expectation of receiving some monetary compensation if and when it should be marketed. Further, in light of *Brown,* it is highly unlikely that appellee could establish any cognizable "proprietary interest" in the marijuana. Since the marijuana was contraband and could not be legally possessed, any property interest which appellant had therein could not have been "legitimate", as *Brown* requires.

An argument that appellee had constructive possession of the marijuana by virtue of its being possessed by his co-conspirators is equally fallacious. The Supreme Court, discussing this position as asserted in *Brown,* termed the idea that a criminal conspiracy could support a claim of constructive possession of property a "doubtful assumption." 411 U.S. at 230 n. 4, 93 S.Ct. 1565.[5] That theory is even less tenable in the case before us. Because the marijuana was contraband, no co-conspirator of appellee could have had a legitimate

4. A principle which we have applied, *supra,* to the instant case.

5. The Court did not rule directly on this claim, as the government had alleged a conspiracy lasting only to the day prior to the search.

"property interest" therein. Appellee thus could not claim an interest from his co-conspirators that they themselves did not possess.

Because appellee was without standing to dispute the search and seizure herein, we reverse the order of the lower court, reinstate the guilty verdicts and remand the case for disposition of the remaining post-trial motions and sentencing.

HOFFMAN, J., concurs in the result.

CERCONE, J., dissents.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.