396 A.2d 793

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**William M. GLENDENING, Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 24, 1978.

Decided Jan. 18, 1979.

358

James J. Conte, Assistant District Attorney, Greensburg, for Commonwealth, appellant.

Ronald C. Makoski, Greensburg, for appellee.

Before PRICE, HESTER and WATKINS, JJ.

HESTER, Judge:

Following a jury trial on April 18–19, 1977, appellee William M. Glendening was found guilty of criminal conspiracy and not guilty of theft by deception. The court thereafter arrested judgment on the conspiracy count, finding the verdicts inconsistent, and ordered appellee discharged. This appeal by the Commonwealth followed. For the reasons which follow, we reverse and remand.

 Where the question is purely one of law, the Commonwealth may appeal from an adverse ruling in a criminal case. *Commonwealth v. Blevins*, 453 Pa. 481, 309 A.2d 421 (1973); *Commonwealth v. Mader*, 253 Pa.Super. 58, 384 A.2d 974 (1978). Since the propriety of the jury's verdict is a pure question of law, this appeal is properly before us.

A brief recitation of the relevant facts will aid in understanding the issues. The charge against appellee was essentially that he defrauded his car insurance company of some $3,700.00. Facts adduced through the testimony of appellee's convicted co-conspirators Barry MacDonald and Gerald Mannerino [1] established that in 1973, appellee owned a 1967 red Corvette convertible, partially damaged. MacDonald and Mannerino were proprietors of an auto body shop in Greensburg and were in possession of a 1967 coupe which appellee was very interested in obtaining. Co-conspirators MacDonald and Mannerino sold appellee a 1971 Corvette in exchange for his convertible and $1,500.00 in cash. [2] Pursuant to the scheme, appellee used the 1971 Corvette until

---

[1] Both of these co-conspirators had earlier pled guilty to the scheme for which appellee was tried. MacDonald is appellee's cousin.

[2] Appellee borrowed this money from the Elliot Credit Union which placed an encumbrance on the title to the 1971 Corvette.

April, 1974. At that time, he delivered the car to his co-conspirators who proceeded to strip the car of its motor, transmission, the front end, radio, two roof panels, and parts of the interior. They then towed the vehicle to a strip mine in Findlay Township and abandoned it.

Meanwhile, again according to plan, appellee reported the car stolen on April 12, 1974 and the next day it was recovered by the Findlay Township police. Arrangements were made to have the vehicle towed to appellee's home in Greensburg. Shortly thereafter, he filed a loss claim with his insurance company, Motors Insurance. After due investigation by an adjuster, Motors approved the claim, issuing a check to appellee in the amount of $3,752.30.[3] Motors "bid out" the Corvette for salvage and received two bids: one from MacDonald for $600 and one from a local Chevrolet dealer for $275. The car was sold to MacDonald on May 30, 1974. The plot was to be consummated when appellee used the insurance money to buy the "mint condition" 1967 coupe from MacDonald and Mannerino. It is unclear from the record whether this last transaction ever occurred and it appears very little of the insurance money was ever received by MacDonald or Mannerino for their part in the scheme.

After deliberating 3½ hours, the jury found appellee not guilty of theft by deception but guilty of conspiracy to commit theft by deception. In its decision granting appellee's motion for arrest of judgment, the court reasoned that the jury, in acquitting appellee of theft by deception, stated "in effect that [appellee] has committed no overt act, an essential ingredient to a finding of guilty of Conspiracy." Opinion at 3. Finding the verdicts logically inconsistent, the court arrested judgment.

 It is firmly established in this Commonwealth that consistency in a verdict in a criminal case is not necessary and that inconsistency is not a ground for reversal. *Commonwealth v. Strand*, 464 Pa. 544, 347 A.2d 675 (1975);

---

**3.** Motors also issued a check to the title encumbrancer, Elliott Credit Union, in the amount of $1,389.58.

*Commonwealth v. Carter*, 444 Pa. 405, 282 A.2d 375 (1971); cf. *Dunn v. U. S.*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932). The rationale for this rule rests in the jury's sole prerogative to decide that conviction on some counts will provide sufficient punishment to acquit on the remaining counts. "[A]llowing inconsistent verdicts in criminal trials runs the risk that an occasional conviction may have been the result of compromise. But the advantage of leaving the jury free to exercise its historic power of lenity has been correctly thought to outweigh that danger." *Commonwealth v. Stegmaier*, 247 Pa.Super. 159, 371 A.2d 1376, 1377–8 (1977), quoting *U. S. v. Carbone*, 378 F.2d 420, 422 (2d Cir., 1967). We recently held that conviction of conspiracy coupled with acquittal of the act underlying the conspiracy is not a ground for reversal, providing there is sufficient evidence to support the conviction returned by the jury. *Commonwealth v. Love*, 248 Pa.Super. 387, 375 A.2d 151 (1977); see also, *Commonwealth v. Warlow*, 246 Pa.Super. 224, 369 A.2d 1293 (1977); *Commonwealth v. Davison*, 243 Pa.Super. 12, 364 A.2d 425 (1976); *Commonwealth v. Jackson*, 230 Pa.Super. 386, 326 A.2d 623 (1974).

■ Appellee argues, and the lower court held, that the acquittal of the theft negated an essential element of the conspiracy, i. e., the overt act of theft. However, "[a]n acquittal cannot be interpreted as a specific finding in relation to some of the evidence . . . [T]he court looks upon this acquittal as no more than the jury's assumption of a power which they had no right to exercise, but to which they were disposed through lenity," *Carter*, supra, 444 Pa. 405, 282 A.2d at 376, quoting *Commonwealth v. Parrotto*, 189 Pa.Super. 415, 150 A.2d 396 (1959).

■ Since we conclude that, based upon our foregoing review of the facts, there was sufficient evidence to support the conspiracy conviction, *Love, Stegmaier,* supra, the order arresting judgment must be reversed. We therefore re-

mand for disposition of the remaining post-trial motions and sentencing.[4]

4. The parties urge this court to resolve several issues presented to the post-verdict court, but not considered because of its disposition of the case. We think the efficient and orderly administration of justice would be better promoted by first affording the lower court an opportunity to rule upon the unresolved issues by written opinion, see Pa.R.App.P.1925, before this court does so. We followed this procedure in *Parrotto*, supra, and *Commonwealth v. Mader*, 253 Pa.Super. 58, 384 A.2d 974 (1978).