420 A.2d 722

**COMMONWEALTH of Pennsylvania**

v.

**Edward C. SHAFFER, III, Appellant.**

Superior Court of Pennsylvania.

Argued March 11, 1980.

Filed June 20, 1980.

Gregory V. Smith, Williamsport, for appellant.

Robert Banks, First Assistant District Attorney, Williamsport, for Commonwealth, appellee.

Before SPAETH, BROSKY and VAN der VOORT, JJ.

**SPAETH, Judge:**

This appeal arises from judgment of sentence imposed upon a conviction of receiving stolen property.

On January 19, 1979, appellant, a truck driver, picked up from his employer in Texas a trailer loaded with packaged beef to be transported to a consignee in Auburn, Maine. The purchase price of the beef was $50,589.63. On January 20, while en route, appellant telephoned his supervisor to report that his tractor had broken down near Effingham, Illinois. The supervisor instructed appellant to stay with the trailer, and said that another driver would be sent within two days to relay the load to Auburn. The supervisor also asked appellant to call again on the 21st. Appellant did not call again. Instead, he repaired his tractor, and proceeded with the trailer of beef to his home in Lycoming County, Pennsylvania. There, on January 22 and 23, appellant sold beef out of the trailer to friends and neighbors for 30 to 60 cents per pound, depending upon the cut of beef. Purchasers of the beef paid by cash and check. Those paying by check were instructed to make their checks payable to appellant or to fictitious companies. On the 23rd, a state trooper, attracted by the crowd congregated along the roadside by appellant's trailer, stopped to learn the nature of appellant's activities. Appellant told the trooper that he was reselling bruised beef that he had bought from a processing company in Texas. Later the same day he gave the police other false explanations regarding his ownership and possession of the beef, and produced a false bill of lading. He was arrested and charged with theft by unlawful taking or disposition, 18 Pa.C.S.A. § 3921 (1973), and receiving stolen property, 18 Pa.C.S.A. § 3925 (1973). After his arrest, the police recovered from appellant approximately $4,356 in cash and $1,305 in checks as proceeds from the sale of the beef. The relatively small portion of the load of beef not sold was delivered by another driver to Auburn and sold for $7,415.69.

At trial, appellant testified that the beef was to be delivered fresh in Auburn, but the refrigerator unit in the trailer

ran out of fuel while his tractor was broken down near Effingham and the beef froze and so he decided to sell the beef to reduce the loss his employer would suffer if it were delivered to Auburn and rejected by the consignee. Appellant also testified that he intended to remit to his employer all proceeds from his sale of the beef. A food inspector from the State Department of Agriculture testified, however, that he had seen the beef appellant was selling, and in his opinion the beef had never been frozen. The Commonwealth also presented evidence that appellant's employer had not given appellant authority to sell the beef and did not know until afterwards that he had done so.

The jury acquitted appellant of theft by unlawful taking or disposition but convicted him of receiving stolen property. Appellant now argues that this verdict shows that the jury must have believed that the beef he sold was not stolen. The jury must have so believed, appellant argues, because the uncontradicted evidence showed that he was the only participant in the alleged offense, *i. e.*, the only person who took the beef from his employer, transported it to Pennsylvania, and sold it.[1] If the beef was stolen, in other words, appellant is the only person who could have stolen it; since the jury acquitted him of theft, it must have believed that the beef was not stolen. Since the jury believed that the beef was not stolen, appellant's argument continues, the Commonwealth failed to prove that appellant received stolen property, and the jury's verdict to the contrary was mistaken.

The fault with appellant's argument is that "[a]n acquittal cannot be interpreted as a specific finding in relation to some of the evidence." *Commonwealth v. Carter*, 444 Pa. 405, 408, 282 A.2d 375, 376 (1971), *quoting Commonwealth v. Parrotto*, 189 Pa.Super. 415, 422, 150 A.2d 396, 399

1. Although the evidence showed that appellant's relatives helped him sell the beef in Lycoming County, there was no evidence that the relatives knew that the beef was stolen or were involved in a conspiracy to defraud appellant's employer. It further appears that appellant was the only person arrested in connection with this incident.

(1959). When an acquittal on one count in an indictment is inconsistent with a conviction on a second count, "the court looks upon [the] acquittal as no more than the jury's assumption of a power which they had no right to exercise, but to which they were disposed through lenity." *Id. Accord: Commonwealth v. Strand*, 464 Pa. 544, 547, 347 A.2d 675, 676 (1975). Thus, consistency in a jury's verdicts in a criminal case is unnecessary, provided there is sufficient evidence to support the convictions the jury has returned, *Commonwealth v. Stegmaier*, 247 Pa.Super. 159, 371 A.2d 1376 (1977); *Commonwealth v. Dolny*, 235 Pa.Super. 241, 342 A.2d 399 (1975); *Commonwealth v. Jackson*, 230 Pa.Super. 386, 326 A.2d 623 (1974), and inconsistency in verdicts affords an accused no cause for relief, even though it may be difficult to reconcile the verdicts, *Commonwealth v. Kwatkoski*, 267 Pa.Super. 401, 406 A.2d 1102 (1979). As Judge FRIENDLY has cogently stated:

> The very fact that the jury may have acquitted of one or more counts in a multicount indictment because of a belief that the counts on which it was convicted will provide sufficient punishment . . . forbids allowing the acquittal to upset or even to affect the simultaneous conviction. We have repeatedly so held . . . . Indeed, if the rule were otherwise, the Government would be entitled to have the jury warned that an acquittal on some counts might undermine a guilty verdict on others–almost the opposite of the standard instruction, which is obviously beneficial to criminal defendants, and which the judge gave here without objection. It is true, as both Judge Hand and Mr. Justice Holmes recognized . . . that allowing inconsistent verdicts in criminal trials runs the risk that an occasional conviction may have been the result of compromise. But the advantage of leaving the jury free to exercise its historic power of lenity has been correctly thought to outweigh that danger.
> *United States v. Carbone*, 378 F.2d 420, 422 (2d Cir. 1967), *cert. denied*, 389 U.S. 914, 88 S.Ct. 242, 19 L.Ed.2d 262 (1967) (citations omitted).

*Accord: Commonwealth v. Glendening*, 262 Pa.Super. 357, 396 A.2d 793 (1979).

Moreover, in the present case, although the jury's verdicts are inconsistent as a matter of law, they may not have seemed inconsistent to the jury. The lower court instructed the jury, in accordance with 18 Pa.C.S.A. § 3921, that appellant was guilty of theft by unlawful taking or disposition if he unlawfully took or exercised unlawful control over the beef with the intent to deprive his employer of it. The jury might have hesitated to convict appellant of this offense, given the difficulty of identifying the exact moment that appellant "unlawfully took" the beef from his employer. Appellant's taking of the beef in Texas was lawful, for his employer gave it to him there to transport to Maine; and just as surely, so the jury might believe, appellant's conversion of the beef in Lycoming County was a fraudulent attempt to deprive the employer of his property. When, then, between Texas and Lycoming County, did appellant steal the beef? The jury might have been unsure of the answer to this question, and feeling unsure, it might have decided to avoid the issue by convicting appellant of receiving instead of theft. The jury was instructed that it should not convict appellant of both offenses because receiving stolen property was a constituent part of theft by unlawful taking or disposition. It was also instructed, in accordance with 18 Pa.C.S.A. § 3925, that appellant was guilty of receiving stolen property if he intentionally received, retained, or disposed of the beef knowing that it was stolen or believing that it had probably been stolen. There was no question that appellant had retained and disposed of the beef, and substantial evidence was presented that appellant stole the beef and hence knew at the time of his sale that it was stolen. Thus, if one balances the plain proof that appellant was guilty of receiving stolen property against the conceptual problems the jury may have encountered in determining whether he was also guilty of theft by unlawful taking or disposition, and add to the balance the court's instruction that appellant should not be convicted of both

offenses, the jury's verdicts do not seem so inconsistent as they first appear to be.

In his brief, appellant protests that his argument is not based on the jury's inconsistent verdicts. We are not sure we understand appellant's point; since the premise of his argument is the jury's supposed belief that the beef he sold was not stolen, and since this supposed belief is derived from the apparent, or real, inconsistency of the jury's verdicts, it seems to us that despite his protest, appellant's argument does depend on the mistaken assertion that a jury's verdicts must be consistent. It may be, however, that appellant believes the insufficiency of the Commonwealth's proof is shown by the maxim that a thief of goods cannot be the receiver of the same goods. *See Commonwealth v. Black*, 267 Pa.Super. 598, 407 A.2d 403 (1979); *Commonwealth v. Simmons*, 233 Pa.Super. 547, 336 A.2d 624 (1975); *cf. Commonwealth v. King*, 238 Pa.Super. 190, 357 A.2d 556 (1976); *Commonwealth v. Phillips*, 215 Pa.Super. 5, 257 A.2d 81 (1969). This maxim, however, must be reexamined in light of the Supreme Court's decision in *Commonwealth v. Adams*, 479 Pa. 508, 388 A.2d 1046 (1978).

In *Adams*, an automobile was stolen on June 19, 1974. Two days later the owner and a friend saw the defendant standing next to the stolen car. The friend approached the defendant, who, after starting the engine, offered to sell the car for $100. The defendant was arrested, charged under 18 Pa.C.S.A. § 3921 with theft by unlawful taking or disposition, and convicted. On appeal, the Supreme Court held that whoever exercises unlawful control over movable property of another may be convicted under section 3921 even though there is no evidence showing that he originally misappropriated the property. This holding, the Court believed, was supported by the policies embodied in the Crimes Code. In the Crimes Code, the numerous theft offenses existing at common law and under the old Penal Code have been consolidated into the single offense of "theft." *See* 18 Pa.C.S.A. § 3902 (1973). This crime of "theft" was

intended to embrace the offenses heretofore known as larceny, embezzlement, false pretense, extortion, blackmail, fraudulent conversion, receiving stolen property, and the like. It is intended by this subsection and this article to eliminate the technical distinctions between larceny, fraudulent conversion, etc. The basic philosophy adopted is that if a person takes something which does not belong to him, this constitutes theft. It is contemplated that the indictment will state the facts justifying the conclusion that a theft was committed.

Toll, Pennsylvania Crimes Code Annot. § 3902 at 420 (1974), *reprinting* the Comment of the Joint State Gov't Comm'n (1967).

Thus, receiving stolen property, which had traditionally been treated as a distinct offense, was made part of the new comprehensive "theft" offense because " 'analytically the receiver does precisely what is forbidden by [section 3921], namely, he exercises unauthorized control over property of another with the purpose of applying or disposing of it permanently for the benefit of himself or another not entitled.' " *Commonwealth v. Adams* 479 Pa. at 512 n.4, 388 A.2d at 1048 n.4, *quoting* Model Penal Code, Tent. Draft. No. 2, § 206.8, Comment 1.

It is true that *Adams* held only that the theretofore distinct offense of receiving stolen property was assimilated by 18 Pa.C.S.A. § 3921 into the offense of theft by unlawful taking or disposition. The opinion did not hold the converse, that is, that the offense of theft by unlawful taking or disposition was assimilated by 18 Pa.C.S.A. § 3925 into the offense of receiving stolen property, but we think this result follows naturally. The comments to the Model Penal Code provision from which section 3925 was derived state:

Consolidation of receiving with other forms of theft affords the same advantages as other aspects of the unification of the theft concept. It reduces the opportunity for technical defenses based upon legal distinctions between the closely related activities of stealing and receiving what is stolen. One who is found in possession of

recently stolen goods may be either the thief or the receiver; but if the prosecution can prove the requisite thieving state of mind it makes little difference whether the jury infers that the defendant took directly from the owner or acquired from the thief.

Model Penal Code, Tent. Draft. No. 2, § 206.8, Comment 1. The drafters' indifference to whether a person with a "thieving state of mind" is convicted as a thief under section 3921 or as a receiver under section 3925 is further evinced by the language employed in the two provisions. The phrase in section 3925, "receives, retains, or disposes of," was intended to express the idea of "acquisition of control whether in the sense of physical dominion or of legal power to dispose," Model Penal Code, Tent. Draft No. 2, § 206.8, Comment 2, and this idea of control is the same idea expressed in section 3921 by the phrase "exercises unlawful control over."

Under 18 Pa.C.S.A. § 3903, a person convicted of receiving stolen property is subject to the same penalties as a person convicted of theft by unlawful taking or disposition. *Commonwealth v. Belcher*, 233 Pa.Super. 212, 335 A.2d 505 (1975). Under 18 Pa.C.S.A. § 3902,

[A]n accusation of theft may be supported by evidence that it was committed in any manner that would be theft under this chapter [covering theft and related offenses], notwithstanding the specification of a different manner in the complaint or indictment, subject only to the power of the court to ensure fair trial by granting a continuance or other appropriate relief where the conduct of the defense would be prejudiced by lack of fair notice or by surprise.

Given the drafters' intent to remove "all artificial distinctions between different forms of theft (including receiving stolen property)," *Commonwealth v. Belcher, supra,* 233 Pa. Super. at 217, 335 A.2d at 507, and to make the focus in the criminal prosecution of all theft offenses the accused's "thieving state of mind," it would be anomalous to hold that one who is the original misappropriator of property cannot be convicted under section 3925 as the receiver of the property when the language of section 3925 is so worded as

to proscribe the misappropriator's conduct. Furthermore, it should be remembered that the sole reason the unified offense of theft is codified in a series of separate sections in the Crimes Code is that "the scope of the consolidated offense of theft cannot be conveniently defined in a single comprehensive section . . . ." Model Penal Code, Tent. Draft. No. 2, Article 206, Introductory Note.[2]

We realize that our decision today does not square completely with *Commonwealth v. Justice,* 230 Pa.Super. 537, 326 A.2d 564 (1974). In *Justice,* a detective at Gimbel's Department Store observed the defendant take a jacket from a clothesrack, stuff the price tags in the sleeve of the jacket, put the jacket on, over his clothes, and walk towards the exit. The defendant was arrested and charged with larceny and receiving stolen goods under the old Penal Code. *See* Act of June 24, 1939, P.L. 872, §§ 807, 817, *as amended,* 18 P.S. §§ 4807, 4817, *repealed by* the Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, § 5. At a non–jury trial the defendant was acquitted of larceny but convicted of receiving stolen property. We held that because "the defendant [was] the sole participant in the alleged crime, an acquittal on the charge of larceny necessitates an acquittal on the charge of receiving stolen goods." 230 Pa.Super. at 541, 326 A.2d at 565. This was so because "[h]aving been acquitted of the charge of larceny, it is difficult for this Court to envision the factual or legal basis for a conviction on the charge of receiving stolen goods. If the goods were stolen (a prerequisite to both larceny and receiving stolen goods), the appellant alone could have been the culprit." 230 Pa.Super. at 540, 326 A.2d at 565. *Justice,* however, may be

2. Although *Adams* and our decision today hold that a thief's misappropriation of property will almost always be proscribed by both section 3921 and section 3925, legal safeguards assure that an accused will not be unfairly tried and sentenced. The accused's right to adequate notice of the crime he is alleged to have committed is protected by 18 Pa.C.S.A. § 3902 and Pa.R.Crim.P. 304 (rule governing bills of particulars). If the indictment or information charges one offense in two or more counts, the accused may have the superfluous counts dismissed. *United States v. Bloom,* 78 F.R.D. 591, 604 (E.D. Pa.1977). If convicted, the accused may receive but one sentence on the theft offense. 18 Pa.C.S.A. § 3902.

explained as a case that arose and was decided under the Penal Code, which maintained legal distinctions between larceny and receiving stolen goods and afforded defendants technical defenses no longer available under the Crimes Code.

■ It is true that we cited *Justice* in a subsequent case that arose under the Crimes Code. *Commonwealth v. Fox*, 259 Pa.Super. 565, 393 A.2d 970 (1978). While our discussion in *Fox* may be read as indicating a belief that *Justice* is valid precedent for cases arising under the Crimes Code, since we found the factual situation in *Fox* to be distinguishable from the situation in *Justice*, we were not required to determine the larger issue of whether the decision in *Justice* would have been different had it arisen under the Crimes Code.

■ We have also examined appellant's claim that the lower court erred in refusing an individual and closed voir dire because of the pre–trial publicity his arrest generated, and have found the claim to be without merit. *See Commonwealth v. Herron*, 243 Pa.Super. 319, 365 A.2d 871 (1976); Pa.R.Crim.P. 1106(e).

Affirmed.