**Commonwealth v. Thomas**

*Bruce Sagel, Assistant District Attorney,* for Commonwealth.

*Irwin Gross,* for defendant.

KLEIN, R. B., *J.,* September 16, 1980—Defendant, Kenneth B. Thomas, was tried before this court with a jury, and was convicted of conspiracy. Defendant's motions for a new trial and in arrest of judgment were denied, and defendant was sentenced to 11 to 23 months in the county prison, with four years concurrent probation.

The evidence at trial included the testimony of Police Officer Paul Domenic, who was disguised as an elderly man on the date in question, and two of his back-up officers on the "grandpop" detail. They testified that while Officer Domenic was picking through some refuse in an alleyway, he was accosted by defendant and co-defendant, Clifford Thompson, who both threatened the officer, took money from his pocket and fled. Both were apprehended almost immediately by the back-up team.

Defendant filed boilerplate motions as to the sufficiency and weight of the evidence, alleged that the jury was prejudiced by the publication of newspaper articles during the weekend between jury deliberations, and generally objects to the court's charge to the jury. In addition, defendant objected by "post-trial memorandum" to certain of the prosecutor's remarks in closing. Defendant also orally adopted the arguments of co-defendant Thompson at the hearing on post-verdict motions with respect to defendant's conviction of conspiracy despite his acquittal of the substantive crime, and the grading of the conspiracy offense.

## I. Sufficiency of the Evidence

At trial, Officer Domenic testified that on March

20, 1979, at 7:15 p.m., he was a member of the Philadelphia police stake-out unit disguised as an elderly man. His "grandpop" disguise included an old, oversized overcoat, a salt and pepper wig, and the officer's own beard. Officer Domenic walked part way up the 1200 block of Commerce Street, actually a narrow back alley.

He noticed two males, defendant and co-defendant observing him from the mouth of the alleyway. He began rummaging through some trash, and the two men walked toward him. The officer asked defendant for a nickel and defendant in return asked him for change for a 20.

Defendant then approached the decoy and yanked his beard. Domenic yelled, "What are you doing, mister?" The latter responded, "There's a lot of cops out here. We're just checking you out." Thompson from across the street asked, "Is it real?" and defendant said it was. According to Domenic, Thompson at that point said, "Give us the money before you get fucked up." The officer began to walk away and the other two caught up to him, one on each side. Each made threatening remarks to the "old man" and demanded his money. Defendant reached inside his jacket in a menacing manner.

Domenic then removed two one dollar bills wrapped around theatrical money* from his pocket and handed them to defendant. The officer yelled a pre-arranged signal to his backup team, "Give me back my money." He saw Officer Michael Tursi run by yelling, "Police, freeze," and saw the two assailants in custody a few minutes later. Officer Domenic testified that he had bought cigarettes and a candy bar at a store approximately one block away a couple of minutes before the incident at

---

*Sometimes called a "Michigan bankroll," or bait money.

which time he had removed the bank roll from his pocket.

Officer Tursi testified that he watched the encounter between Domenic and the pair from inside an unmarked police van parked 60 to 70 feet up Commerce Street. He saw defendant and Thomas follow the officer and engage in conversation with him. One of them tugged Domenic's beard, and they followed him down the street. One of the males reached inside his jacket and the officer handed him money. Domenic yelled the signal and Tursi leapt out of the van, yelling, "Freeze, police." After a brief chase, he apprehended both men in a parking lot. Thomas dropped the money and raised his hands.

Officer Paul Raley, another back-up team member, said he saw the pair follow Domenic and engage in conversation with him. Raley lost sight of them. He next saw them run, heard Domenic's signal, and joined the pursuit. He also saw Thomas drop the money in the parking lot.

Defendant testified that he had a couple of beers at a bar at 13th and Filbert Streets, exited and met Thompson outside. Deciding to take the train home, the two walked one block to the Reading Terminal train station. They changed their minds and walked a brief distance toward the White Tower Restaurant at 12th and Commerce. However, defendant testified, he thought he heard someone call his name from up Commerce Street.

He walked up the alley and saw an old man picking through the trash. The old man asked him for a nickel or dime. Then according to defendant, Domenic pulled out a wad of money, saying it was his sister's rent money, it was all he had, and would defendant give him some money to get something to eat. Defendant noticed a pistol under the "old

man's "coat, so he walked away quickly. He denied robbing the old man.

The jury found defendant and Thompson not guilty of robbery and convicted them of conspiracy. The court ruled that the conspiracy would be of the lowest grade of robbery charged on the robbery bill, a third degree felony.

The evidence is sufficient to find defendant guilty of conspiracy to commit robbery. While the jury necessarily found that the two did not go so far as to attempt to rob Officer Domenic, there was certainly enough evidence from which they could conclude that the two agreed to rob him and that they performed one or more overt acts with that end in mind, such as following him, yanking his beard or demanding money. A trier of fact can infer conspiracy from acts that indicate a defendant and his confederates were acting in concert: Com. v. Neff, 407 Pa. 1, 179 A. 2d 630 (1962); Com. v. Armbruster, 225 Pa. Superior Ct. 415, 311 A. 2d 672 (1973).

Here, the jury apparently chose to believe part, but not all of the officers' testimony, and perhaps part of Thomas' testimony. "[T]he finder of fact may believe all or a part of or none of the testimony of any witness." Com. v. Roux, 465 Pa. 482, 350 A. 2d 867 (1976).

Proof of conspiracy involves evidence of an agreement between the defendants with the intent to promote or facilitate the commission of the offense, here robbery, and some overt act taken toward the commission of the robbery. There were sufficient overt acts, other than the robbery itself, to establish the crime of conspiracy, and the evidence was sufficient to sustain a conviction of conspiracy.

## II. Jury Prejudice

The jury in the instant case deliberated on

Thursday, September 13, 1979, and, without objection by counsel, was excused for three days, due to the Bench-Bar Conference commencing the next day. The jury was not sequestered, again without objection by counsel. The jury returned on Monday, September 17, 1979, whereupon it rendered its verdict.

Subsequently, defendant filed post-verdict motions arguing that while the jury was excused for the weekend, two articles appeared in the newspapers with stories involving the same police officers in another "grandpop" robbery. Defendant claims these articles, which came to his attention after the jury was dismissed "may" have prejudiced the jury.

However, there is no evidence that any of the jurors read these articles. Nor is there any evidence that if they had, the articles would have had any effect on any juror's verdict. This court admonished the jurors not to read any papers during the long weekend, and defendant has presented no evidence that any juror violated those orders.

This court need not engage in speculation about possibilities for which there is no evidence. There is no evidence that any juror was influenced by the newspaper articles.

### III. Court's Charge to Jury

Defendant, in his post-verdict motions, alleges that "the charge to the jury was objectionable," and states that upon transcription of the notes of testimony, specific allegations will be made. Defendant never made any specific allegations as to the objectionable aspects of the charge. A mere allegation that the charge was objectionable, without specifics, is inadequate, and any specific objections are therefore waived. See Com. v. Clair, 458 Pa. 418, 326 A. 2d 272 (1974).

## IV. Prosecutor's Closing

Defendant objects to two remarks made by the prosecutor in closing. In the first comment, the Assistant District Attorney, Mr. Sagel, stated:

"Now much was made in this particular case about the facts. Could it have happened? Is it reasonable? I ask you, Ladies and Gentlemen, this is not an easy case. Why do you think you hear so much about old men getting robbed?

"MR HURD: Objection.

"Mr. SAGEL: Not necessarily because they have money." (p. 171)

The prosecutor here was simply responding to defense counsel's arguments that it was incredible that anyone would want to rob a poor, elderly man. While perhaps the district attorney's choice of words could have been more judicious, defendant engages in extravagant hyperbole by suggesting that these remarks are in any way comparable to the remarks condemned in the cases cited in his memorandum. The prosecutor did not express any personal belief, nor did he attempt in any way to blacken the character of either defendant.

The second objected to remark by defendant was Mr. Sagel's argument:

"Or would he tell you that certain factors were said by Mr. Thompson about fucking him up, or cutting out his heart and one man walked across the street." (p. 174).

At this point, the prosecutor was simply arguing that the details that the officer recalled fit logically into his account of the incident. Defendant argues that Mr. Sagel misquoted Mr. Thompson, but that argument is misplaced.

Thompson did threaten to "fuck up" the officer, according to the officer. And defendant threatened to "cut your heart out."

While co-defendant's counsel objected to the above comments, defendant's counsel did not. Nor did either attorney make a motion for a mistrial as a result of the comments, or for curative instructions. However, such motions were not necessary.

The prosecutor's remarks here were well within the allowable range of comments and were reasonable responses to both defense counsel's arguments. When one reads Mr. Sagel's entire closing to the jury, these two remarks do not stand out as improper. Rather, they merge into a reasonable summation and explanation of the evidence. Minor error in the prosecutor's choice of words, if any, was harmless. """A defendant is entitled to a fair trial but not a perfect one."""" Com. v. Martinolich, 456 Pa. 136, 162, 318 A. 2d 680 (1974); Com. v. Hill, 450 Pa. 477, 301 A. 2d 587 (1973); Lutwak v. United States, 344 U.S. 604 (1953).

Defendant here received a fair trial and was not prejudiced in any way by the prosecutor's closing.

## V. Conspiracy: Charge and Grading

At the hearing on post-verdict matters, defendant's counsel stated he wished to adopt co-defendant's counsel's arguments that co-defendant must be acquitted of conspiracy since he was acquitted of robbery, which he alleges was an essential overt act, and in the alternative, that the conspiracy charge may rise no higher than a third degree misdemeanor. However, defendant's counsel did not heed the court's instructions to file written supplemental post verdict motions to preserve these

issues on appeal, and they are therefore waived: Clair, supra.

In any event, we considered and rejected those same contentions in our opinion in co-defendant's case. Because they are without merit, there was no ineffectiveness of counsel in the failure to raise them in written supplemental post-verdict motions. (See Com. v. Glendening, 262 Pa. Superior Ct. 357, 396 A. 2d 793 (1979).)

In the court's charge, the jury was only told that the object of the conspiracy was to commit a robbery. They were not instructed that the object of the conspiracy could have been to commit a theft, namely, to take property from the person of the victim without force. Thus of necessity the jury had to find the object of the conspiracy a robbery, and therefore the court was correct in ruling that the defendant was guilty of the commission of a conspiracy to commit the lowest grade of robbery, a felony of the third degree. . . .

In conclusion, the evidence was sufficient to sustain a conviction of conspiracy, there was no evidence the jury was prejudiced by, or even aware of, certain newspaper articles, the court's charge was proper, the prosecutor in his closing did not engage in misconduct or prejudice defendant, and defendant's objections to the charge on and grading of conspiracy are waived and are, in any event, without merit.

Defendant was duly convicted of the charge of conspiracy and the post-verdict motions were properly denied.