399 A.2d 703

COMMONWEALTH of Pennsylvania

v.

Thurston STONER, Sherman G. Aungst, Sherman L. Aungst.

Appeal of Thurston STONER.

Superior Court of Pennsylvania.

Argued Dec. 6, 1977.

Decided March 9, 1979.

Peter Burchanowski, Williamsport, for appellant.

Michael J. Williamson, District Attorney, Lock Haven, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

Appellant was found guilty in a non-jury trial of theft by failure to make a required disposition of funds received.[1] On April 12, 1977, judgment of sentence was imposed placing appellant on five (5) years probation, and assessing a fine of $500.00, the costs of prosecution, and restitution. From that sentence this appeal is taken.

This prosecution was initiated on the complaint of Mr. Bruce Edmonds, represented by private counsel, Jonathan D. Dunn, Esquire. It was approved by the District Attorney of Clinton County, J. Michael Williamson, Esquire, who represented the Commonwealth throughout these proceedings.

1. 18 Pa.C.S. § 3927.

Mr. Edmonds, appellant, and a co-defendant[2] joined together in a business venture which became incorporated as Clinton Housing Systems, Inc. The purpose of the corporation was to engage in the building of homes. Mr. Edmonds was its president and appellant its secretary. These officers attempted to establish a line of credit for the corporation through the Merchants National Bank of Allentown, Pennsylvania, but the bank refused the application.

Mr. Edmonds and his wife then applied to the same bank for a personal loan. This loan was approved by the bank in the amount of $20,000.00 and the bank issued its check in that amount to Mr. Edmonds and his wife, who immediately endorsed it to the order of the new corporation, Clinton Housing Systems, Inc. The check was then entrusted to appellant. Although the direct purpose of this loan was to enable the Edmonds to purchase a home, the transaction was to be accomplished through Clinton Housing Systems, Inc., thus enabling this new corporation to establish its credit.

The Edmonds' new home, a modular-type sold by the Stylex Corporation, was purchased by the new corporation, which also paid for the home and installed it on a lot owned by the Edmonds. The Edmonds placed a mortgage on this property, for which a check was received from the Lock Haven Savings and Loan in the amount of $25,200.00.

It had previously been agreed between appellant and Edmonds, with the approval of the bank, that upon completion of the above transaction, the bank loan in the amount of $20,000.00 plus interest would be repaid from the proceeds of the mortgage. Those proceeds were endorsed to the new corporation by Mr. and Mrs. Edmonds, and Mr. Edmonds, as president of the corporation, endorsed the check to attorneys for distribution. From this distribution the new corporation secured a check in the amount of $24,137.10. We assume the difference results from the deduction of costs and fees properly chargeable to the Edmonds. This $24,137.10 check was delivered to appellant and deposited in an account in the

2. As to this co-defendant, a demurrer was granted by the court below. The granting of the demurrer is not an issue in this appeal.

name of Clinton Housing Systems at Fidelity National Bank of Pennsylvania on November 19, 1974.

Appellant, who controlled the accounts of the new corporation, failed to forward payment on the Edmonds' loan. After prodding by the bank and Mr. Edmonds, appellant issued a check to the bank in the proper amount, but stopped payment since appellant knew that at the time the check was issued, the funds in the corporation account were not sufficient to cover it.

The loan was never paid as agreed by the corporation. It is, of course, insolvent. The evidence clearly establishes that appellant diverted funds in his possession and custody from the purpose for which he had received them.

Appellant raises three issues on this appeal.

"1. Should defendant's motion to quash the indictment be granted when the district attorney had a conflict of interest in prosecuting the case, when there was improper venue for the preliminary hearing, when there was a substantive defect in the warrant and summons, and when both the district attorney and the district magistrate abused their discretion in permitting a private criminal complaint in a civil case?

. . . . .

2. Did the lower court err in not granting defendant's combined motions for a new trial and in arrest of judgment when the verdict was contrary to the law, contrary to the evidence and to the weight of the evidence, when the offense charged is unconstitutional in that it makes it a crime to become insolvent, and when the court did not rule on all points raised in defendant's motion to quash.

. . . . .

3. Did the lower court have authority to order restitution."

(Appellant's Brief at 2).

We find none of the above contentions to have merit, except for the claim that the court below was without authority to order restitution. Accordingly, we will affirm the convic-

tion, but vacate the judgment of sentence and remand for resentencing.

The question of the district attorney's alleged conflict of interest warrants further development of background facts from the record. Mr. Edmonds had consulted with the district attorney several times between December, 1974, the date on which it became obvious that appellant had diverted the proceeds of the Edmonds' mortgage, and October, 1975, the date that Attorney Dunn for Mr. Edmonds initiated these proceedings which were subsequently approved by the district attorney. On those occasions, the district attorney indicated an inclination to refuse his approval and voiced his strong belief that the matter should more appropriately be handled as a civil suit. At a date unspecified in the record, but subsequent to the meetings with Mr. Edmonds and prior to the initiation of the present prosecution, the district attorney was engaged as a part of his private law practice to represent Clifford M. Shady, a person entirely unrelated to any of the present proceedings. That private litigation was initiated when appellant and his co-defendant, doing business as Clinton Housing Systems, filed a complaint against Mr. Shady, a subcontractor on the construction of a residence not involved in the present case. The civil action, apparently still unresolved, concerned a claim by Clinton Housing Systems that it had suffered damages in the sale of the residence by reason of Mr. Shady's faulty workmanship in the construction of the foundation. Mr. Shady engaged Mr. Williamson, the district attorney, to represent him in the defense of that matter. Appellant now urges as the sole basis for conflict the fact that Mr. Williamson, in his position as district attorney, approved the present prosecution subsequent to his engagement by Mr. Shady.

■ We were faced with a similar, although not identical, situation in *Commonwealth v. Dunlap,* 233 Pa.Super. 38, 335 A.2d 364 (1975), *aff'd by an evenly divided court,* 474 Pa. 155, 377 A.2d 975 (1977). In *Dunlap,* the district attorney who prosecuted the case also represented the victim in a civil suit arising out of the same transaction. The case was one

of first impression in Pennsylvania, and a majority of this court held, per former President Judge Jacobs, that "[while] it was improper for the prosecuting attorney to permit the appearance of a conflict of interest," the appellant was not entitled to a new trial because he alleged no specific prejudice flowing from the relationship and our review of the record revealed none. *Id.*, 233 Pa.Super. at 42, 335 A.2d at 366. Presently, the argument for the existence of a conflict is far weaker than that in *Dunlap,* because here, the district attorney's relationship with Mr. Shady did not result from the same circumstances giving rise to the instant criminal prosecution. We thus have no difficulty in sustaining the court below in its holding that there was no conflict.

Further, we find no prejudice. The district attorney had previously indicated a mere inclination to disapprove a prosecution. No official action had ever been taken. The fact that when faced with this active prosecution he gave his official decision in the form of approval does not, of itself, establish any abuse of discretion by the district attorney, nor does it establish the specific prejudice to appellant necessary to warrant a new trial.

We, of course, continue to require the district attorneys of this Commonwealth to exercise their duties with complete impartiality. This record, however, absolutely fails to establish any indication to the contrary. Moreover, it would presently be unrealistic to require our district attorneys to abstain from the private practice of law, when the economics of the office in most counties all but demand an ancillary source of income. While a district attorney must certainly strive to avoid even the appearance of a conflict of interest between his official duties and his private affairs, in most counties, particularly smaller ones, he may have a civil practice far more extensive than his official obligations. Although the same standards of professional conduct must be maintained and applied to all, we would naturally expect the district attorneys of the smaller counties to be subject to more frequent challenge on the grounds of possible conflict. Nevertheless, we must emphasize that the same standards

must be employed regardless of county size or extent of private practice in measuring the conflict question.

Further controlling the disposition of appellant's arguments, and mandating affirmance of his conviction, is *Commonwealth v. Crafton,* 240 Pa.Super. 12, 367 A.2d 1092 (1976) (*allocatur denied* July 9, 1976). In *Crafton,* the defendant, in her capacity as a travel agent, collected deposits totaling approximately $56,000.00 from individuals interested in a group tour to Las Vegas. On the date required to pay the wholesaler of the excursion, however, the defendant was $24,000.00 short, even though she had received payment in full. In the subsequent prosecution for theft by failure to make required distribution of funds received, (18 Pa.C.S. § 3927), we initially noted that the crime has four elements:

"1. The obtaining of property of another;
2. Subject to an agreement or known legal obligation upon the recipient to make specified payments or other disposition thereof;
3. Intentional dealing with the property obtained as the defendant's own; and
4. Failure of the defendant to make the required disposition of the property."

*Id.,* 240 Pa.Super. at 16, 367 A.2d at 1094–95.

applying these criteria, this court there concluded that criminal liability attached when the defendant failed to pay the balance due. The fact that the Commonwealth failed to prove that the specific monies were not distributed was held to be irrelevant. In adopting this "net shortage" test, we recognized the difficulty in showing the circuitous route of particular monies through the financial thicket.

Presently, taking the evidence in the light most favorable to the Commonwealth, we are convinced that the requirements of *Crafton* have been satisfied.

With respect to the alleged illegality of the sentence, we held in *Commonwealth v. Flashburg,* 237 Pa.Super. 424, 352 A.2d 185 (1975) (*allocatur denied* April 28, 1976), that no

court in this Commonwealth had the power to order restitution for criminal acts occurring between June 6, 1973, and March 30, 1975. Briefly, that decision was predicated on the fact that in enacting the 1973 Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1 *et seq.*, effective June 6, 1973, (18 Pa.C.S. § 101 *et seq.*), the legislature repealed most of the old Penal Code, including section 1109 of the Act of June 24, 1939, P.L. 872 (18 P.S. § 5109) (authorizing restitution in criminal cases). Because a comparable provision was not inserted into the present Crimes Code until March 30, 1975 (18 Pa.C.S. § 1321(c)), courts in the interim were without statutory authority, and thus power, to order restitution. Appellant's transgression fell within that interval, and we are therefore constrained to hold the sentence illegal.

It should be noted that the supreme court's recent resolution of *Commonwealth v. Walton,* 483 Pa. 588, 397 A.2d 1179 (1979), *rev'g* 245 Pa.Super. 169, 369 A.2d 347 (1976), does not compel a contrary result. In *Walton* the court concurred with our rationale explicated in *Flashburg* concerning the repeal of section 1109. It held, however, that the Act of June 19, 1911, P.L. 1055, § 1, *as amended,* (19 P.S. § 1051), gave the courts of this Commonwealth authority to enter an order of restitution during the June 6, 1973—March 30, 1975 period as a term and condition of probation. Because probation is not involved in the instant proceeding, 19 P.S. § 1051 cannot apply, and *Walton* is inapposite.

Finally, the Commonwealth argues that the issue of restitution is waived. We have held otherwise. *Commonwealth v. Fral,* 248 Pa.Super. 560, 375 A.2d 383 (1977).

The conviction is affirmed. The judgment of sentence, however, is vacated and the case remanded for resentencing in accordance with this opinion.

JACOBS and WATKINS, former President Judges, and HOFFMAN, J., did not participate in the consideration or decision of this case.