457 A.2d 509

**COMMONWEALTH of Pennsylvania**

v.

**Lee N. CELANE, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 10, 1980.

Filed Nov. 19, 1982.

Reargument Denied Jan. 27, 1983.

Petition For Allowance of Appeal Denied March 15, 1983.

94

Harold Gondelman, Pittsburgh, for appellant.

James A. Meyer, District Attorney, Ridgway, for Commonwealth, appellee.

Before PRICE, CAVANAUGH and HOFFMAN, JJ.

PRICE, Judge:

Appellant, Lee N. Celane, was convicted by a jury of failure to make required disposition of funds received [1] and

1. 18 Pa.C.S.A. § 3927(a).

of misapplication of entrusted property,[2] while being acquitted on an additional charge of theft by deception.[3] On this appeal from the judgment of sentence, entered October 3, 1979, appellant contends that: (1) the district attorney had a conflict of interest requiring reversal of his conviction; (2) acquittal on the count of theft by deception precludes his conviction on the other two counts; (3) the court below erred in ordering him to make restitution in the amount of $209,830.63. We find all appellant's contentions to be without merit, except insofar as the restitution order apparently reflects a clerical error in the amount of $63.89.

Appellant was the owner and operator of Regional Contractor's Association ("Regional"), an organization joined by small businessmen for the purpose of obtaining health and accident insurance at reduced group rates for themselves and their employees. From January, 1975 until April 1, 1977, Regional members were insured by, and paid premiums directly to Blue Cross/Blue Shield. In December of 1976, Blue Cross notified Regional members that their coverage through Regional would be terminated, effective April 1, 1977.

The Commonwealth presented witnesses who testified that appellant assured members (as well as his own employees who were to pass this information on to members) that the same insurance protection would be provided through Lincoln National Life Insurance Company ("Lincoln") as had been provided by Blue Cross/Blue Shield. (*see, e.g.,* N.T. Trial 495–496, 566–567, 700). According to the Commonwealth's witnesses, they were informed that this coverage was to be at the same rates charged by Blue Cross/Blue Shield, and that members would receive an additional $5,000 life insurance policy at no extra charge (*e.g.* N.T. Trial 496).

**2.** 18 Pa.C.S.A. § 4113(a). This charge was treated as merged with the charge under § 3927 for sentencing purposes (N.T. Sentencing Hearing 14).

**3.** 18 Pa.C.S.A. § 3922(a)(1).

Mr. Celane did meet with representatives of Lincoln, but was told that coverage could not be provided. (N.T. Trial 593–594). The accountant retained by the D.A.'s office to review Regional's books testified that from March, 1977 to January, 1978, $209,766.74 was paid by 133 members to Regional (N.T. Trial 960). Regional Members testified that they thought the payments were for premiums to Lincoln, and that they would not have paid these sums except to obtain insurance with a reputable licensed company (*e.g.* N.T. Trial 913, 932). Appellant maintained to the contrary that he had informed all members that the group was to be self-insured, and that they would be part of a multiple employer trust.

A portion of the money received from members was used to pay some medical claims submitted. (N.T. Trial 964). The balance appears to have been used by Mr. Celane and his family personally (*e.g.* N.T. Trial 945–949), and for operating expenses of Regional. After complaints by Regional members as to non-delivery of policies and failure to pay outstanding claims, an investigation was conducted, as a result of which defendant was charged.

At the voir dire of the jury, the district attorney told the court and defense counsel that he had represented thirteen of the 133 Regional members listed in the information. His representation of these businesses included the preparation of wills and deeds and various business matters, none of which were related in any way to any civil claims arising out of the factual situation of this criminal case. The district attorney sent letters to all 133 Regional members, on a periodic basis, including the thirteen he had previously represented, keeping them advised of the status of the case.

After a jury trial, appellant was acquitted of theft by deception, but convicted of theft by failure to make required disposition of funds received and of misapplication of entrusted property. Appellant's post-trial motions were denied, and sentence was entered on October 3, 1979. Mr. Celane was ordered to pay the costs of prosecution, to make restitution in the amount of $209,830.63 for the benefit of

the 133 Regional members who made payments to him, and sentenced to a prison term of 3½ to 7 years.

■ Appellant's contention that the district attorney had a conflict of interest such as to require reversal of his conviction is unfounded. While it is, of course, improper for a prosecuting attorney to permit even the appearance of a conflict of interest, in order to obtain a new trial, appellant must establish not only that a conflict actually existed, but also that this conflict resulted in specific prejudice to him. *Commonwealth v. Stoner*, 264 Pa. Superior Ct. 136, 399 A.2d 703 (1979); *Commonwealth v. Dunlap*, 233 Pa. Superior Ct. 38, 335 A.2d 364 (1975), *aff'd by an evenly divided court*, 474 Pa. 155, 377 A.2d 975 (1977).

■ In this case, the district attorney had represented thirteen of 133 Regional members in civil matters unrelated to the criminal prosecution. He quite properly declined to represent anyone in civil suits arising out of the transactions which led to the criminal trial. In *Stoner, supra,* the district attorney had represented an individual in a civil suit against the defendant in an unrelated matter. In that very similar situation we found no conflict of interest.

Further, appellant apparently makes no allegations of specific prejudice, but rather claims that the informational letters sent to Regional members,[4] and the fact that the district attorney accompanied state troopers executing the search warrant "tainted the trial with suspicion of prosecutorial misconduct." [5] Such allegations, if anything, go to

4. These letters were not personalized communications from the district attorney to individuals he had represented, but rather part of a uniform mailing to Regional members (N.T. Trial 424–431). As a result of an agreement between the district attorney and defense counsel to limit the number of witnesses presenting repetitive testimony, only a small percentage of Regional members were actually involved in the trial. These bulletins served to keep those persons not called as witnesses informed as to the status of the case.

5. No actual misconduct has been alleged, and in fact, appellant's attorney stated to the court below that he was not "impugning Mr. Meyer's integrity." (N.T. Trial 193).

the appearance of conflict, rather than to any actual conflict or prejudice.

Appellant finds it significant that the thirteen members who were clients of the district attorney are to receive restitution in the amount of the payments which they made to Mr. Celane. This establishes no prejudice to appellant. Restitution, calculated on the same disinterested basis, is to be paid all 133 Regional members. 18 Pa.C.S.A. § 1106(a) provides that restitution may be ordered when an individual is convicted of any crime wherein property has been stolen, converted, or otherwise unlawfully obtained, and it is not at all unusual that it was imposed by the court in this case. As we stated in *Stoner, supra,*

> [w]e, of course, continue to require the district attorneys of this Commonwealth to exercise their duties with complete impartiality. This record, however, absolutely fails to establish any indication to the contrary. Moreover, it would presently be unrealistic to require our district attorneys to abstain from the private practice of law, when the economics of the office in most counties all but demand an ancillary source of income. While a district attorney must certainly strive to avoid even the appearance of a conflict of interest between his official duties and his private affairs, in most counties, particularly smaller ones, he may have a civil practice far more extensive than his official obligations. Although the same standards of professional conduct must be maintained and applied to all, we would naturally expect the district attorneys of the smaller counties to be subject to more frequent challenge on the grounds of possible conflict. Nevertheless, we must emphasize that the same standards must be employed regardless of county size or extent of private practice in measuring the conflict question.

*Commonwealth v. Stoner,* 264 Pa. Superior Ct. 136, 141–42, 399 A.2d 703, 706 (1979).

■ Appellant's second contention is also meritless. The jury's acquittal of Mr. Celane on the charge of theft by

deception does not in any way preclude his conviction on the other two charges. Under 18 Pa.C.S.A. § 3922(a)(1), in order to establish theft by deception, the fact-finder must be convinced that the defendant intentionally created or reinforced a false impression at the time he obtained or withheld the property of another. No such requirement as to a defendant's state of mind at the time the subject property is acquired is present in either 18 Pa.C.S.A. § 3927(a) or 18 Pa.C.S.A. § 4113(a), both of which deal with a defendant's disposition of property after he has received it.[6]

The court properly charged the jury that under § 3922(a)(1), "deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform a promise." Thus, although the Commonwealth contended that appellant intentionally deceived Regional members when he obtained the premium payments, the jury could quite reasonably have concluded that Mr. Celane at one time intended to obtain Lincoln coverage for members, but that later, knowing these funds were given to him for the sole purpose of buying insurance from Lincoln, he diverted them to other unauthorized and improper uses.

■ Further, even if the verdicts were inconsistent, this would afford appellant no basis for relief. It has long been the rule in Pennsylvania that consistency in a verdict in a criminal case is not required. *Commonwealth v. Gravely,* 486 Pa. 194, 404 A.2d 1296 (1979); *Commonwealth v. Shaffer,* 279 Pa. Superior Ct. 18, 420 A.2d 722 (1980); *Commonwealth v. Glendening,* 262 Pa. Superior Ct. 357, 396 A.2d 793 (1979); *Commonwealth v. Dolny,* 235 Pa. Superior Ct. 241, 342 A.2d 399 (1975). Thus, appellant's

6. *See e.g., Commonwealth v. Crafton,* 240 Pa. Superior Ct. 12, 367 A.2d 1092 (1976). (Deceptive intention was not necessary at time defendant travel agent collected deposits for group tour. Defendant violated 18 Pa.C.S.A. § 3927 when she failed to pay for trip as promised). 18 Pa.C.S.A. § 4113(a) similarly requires no deceptive intent on receipt, but only that the person to whom property is entrusted disposes of it in a manner which is unlawful or involves risk of loss.

acquittal on the charge of theft by deception provides no basis for a challenge to his conviction on the other two counts.

■ Finally, we deal with appellant's contention that the court below erred in providing for restitution in the amount of $209,830.63. Aside from a minor error in calculation, this sum represents the total amount paid to Mr. Celane by 133 Regional members for the purpose of making premium payments to Lincoln.[7]

Appellant argues that testimony showing that he paid some medical and hospital bills upon claims by members or their employees precludes restitution in the full amount of the premium payments. It is true that 18 Pa.C.S.A. § 1106(c)(1) provides that in ordering restitution the court "[s]hall consider the extent of the injury suffered by the victim ..." *Commonwealth v. Erb*, 286 Pa. Superior Ct. 65, 428 A.2d 574 (1981); *Commonwealth v. Fuqua*, 267 Pa. Superior Ct. 504, 407 A.2d 24 (1979). Here, however, Regional members made these payments to appellant for purchase of insurance coverage from Lincoln, which they did not receive, and not for piecemeal payment of some medical bills by Regional or appellant personally. Furthermore, the record reflects numerous incidents of unpaid claims and individuals unable to get other insurance because they developed physical problems while they erroneously thought they had been insured by Lincoln, through Mr. Celane. Thus, as the court below noted, the lack of insurance can be seen to have caused far greater damage to Regional members and their employees than was represented by the restitution ordered. (R. 1393a).

7. The Commonwealth explains that the accounting showed the total amount of payments by Regional members to be $209,766.74. The information contained a figure of $209,830.63, which was apparently used in the court order of sentence. The Commonwealth agrees that the figure should have been $209,766.74, the amount proven in court. (N.T. Trial 960). Because the trial court clearly intended that restitution be in the amount Mr. Celane was paid by Regional members, we will remand to permit the correction of this clerical error.

■ Appellant also maintains that his bankruptcy has rendered him unable to comply with the restitution order. We have held that, as the primary purpose of restitution is to promote rehabilitation of the defendant, the court in imposing restitution must make sure that the amount awarded not only does not exceed damages to the victim, but also does not exceed the defendant's ability to pay. *Commonwealth v. Erb, supra; Commonwealth v. Fuqua, supra.* In this case, the sentencing judge determined that notwithstanding his bankruptcy, appellant would be able to pay the restitution ordered, based upon his "education and experience, his representation of his on-going success and various business operations, all of which reflect on his potential capacity, giving consideration to the fact that he could be eligible for parole at the expiration of his minimum sentence and furlough or work release in one-half of the minimum." (R. 1394a). The amount of restitution was thus appropriately decided below on the basis of the damage caused by appellant and on the basis of his ability to pay, and is erroneous only to the extent of the miscalculation noted above.

■ In addition to evaluating the extent of injury caused by the defendant and his ability to pay, we have held that the sentencing court must consider on the record what type of payment—lump sum or installment—will best serve the needs of the victims and the capabilities of the defendant. *Commonwealth v. Erb, supra; Commonwealth v. Fuqua, supra; see* 18 Pa.C.S.A. § 1106(c)(1). It appears that the court below did not specify on the record the manner in which restitution was to be paid. We remand in order that the amount of restitution may be reduced by the $63.89 error and in order that the court below may consider and determine on the record the appropriate method and timing for payment of restitution by appellant.

This case is remanded to the trial court for the sole purpose that the order of restitution be reduced to $209,-766.74 and the manner of payment specified. Judgment is

otherwise affirmed. Because of the very limited purposes of our remand, we do not retain jurisdiction.