J-A29022-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| KATRINA BOROWSKI, | |
| Appellant | No. 759 EDA 2017 |

Appeal from the Judgment of Sentence December 16, 2016
in the Court of Common Pleas of Philadelphia County
Criminal Division at Nos.: CP-51-CR-0002998-2016
MC-51-CR-0005222-2016

BEFORE: LAZARUS, J., PLATT, J.,* and STRASSBURGER, J.*

MEMORANDUM BY PLATT, J.:          **FILED FEBRUARY 27, 2018**

Appellant, Katrina Borowski, appeals from the judgment of sentence entered on December 16, 2016, following her bench conviction of theft by deception, and receiving stolen property.[1]  On appeal, Appellant challenges the sufficiency and weight of the evidence and the discretionary aspects of her sentence.  For the reasons discussed below, we affirm.

We take the underlying facts and procedural history in this matter from the trial court's May 2, 2017 decision and our independent review of the certified record.

---

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3922(a)(1) and 3925(a), respectively.

Complainant, Raymond Dronsfield, a 60-year-old man, was living alone at 3254 Tilton Street in the area of Port Richmond in Philadelphia in August and September 2015. Between late August and early September, [Appellant] visited Dronsfield on four occasions at his house under the guise of renewing her friendship with him, and was the only other person at his house during that time period. Dronsfield was the only person with access to his house because no one else had a key to the property. On or about late August and early September, [Appellant] took Dronsfield's jewelry box and the items contained inside it from his bedroom without his permission. Although Dronsfield had in the past, occasional contact with [Appellant] on the occasions after he visited his daughter and her mother, who lived approximately three or four doors down from the house where [Appellant] resided, [Appellant] had never visited Dronsfield at his house before the period in question.

On or about one evening in late August and early September, [Appellant] first appeared at Dronsfield's house, knocked on his door, and greeted him with "[h]ello, neighbor" when he answered. After some conversation, Dronsfield invited her inside and asked her if she wanted a drink or snack. After accepting this invitation, a conversation ensued. At some point, [Appellant] asked Dronsfield if she could use the bathroom. She then brought a pocketbook with her upstairs where the bathroom was located in Dronsfield's house. [Appellant] subsequently returned downstairs and left Dronsfield's house a few minutes later.

A few days later, [Appellant] returned to Dronsfield's house, and Dronsfield invited her inside and offered her water or a snack. Again, [Appellant] went upstairs with a pocketbook after indicating to Dronsfield that she needed to use the bathroom. Dronsfield testified that she was "up there for a while." When [Appellant] returned downstairs, she ate a snack before departing. This same sequence of events of [Appellant]'s previous visits occurred approximately two or three days later on a third occasion, [Appellant]'s snacking, excusing herself with a pocketbook to use the bathroom, and eventually departing upon her return downstairs.

On a fourth occasion, two or three days later, when [Appellant] returned to Dronsfield's house, he again offered her a snack. They had a brief conversation, then [Appellant] excused

herself to the upstairs by claiming she needed to use the bathroom. While [Appellant] was upstairs with her pocketbook, Dronsfield heard no noises or running water coming from the bathroom until he suddenly heard something fall that alerted him to the floor above. Due to the sudden noise, he started for the steps. As Dronsfield was walking up the stairs, he observed [Appellant] exiting from inside the middle bedroom. He asked [Appellant] "what she was doing" in his bedroom. She had a pillow in her hand and responded that she "was bringing it down so" she could relax and watch television. They returned downstairs, and [Appellant] left Dronsfield's house a few minutes later after telling him that friends were picking her up. At trial, Dronsfield testified that he never saw anybody arrive on location to retrieve her.

At the time of her departure on this fourth occasion, Dronsfield first realized that his jewelry box containing multiple items was missing from the bureau in the middle bedroom of his home because he returned to investigate the location of the sound that he heard while [Appellant] was upstairs. His jewelry box had always remained on the bureau in that particular location since it was given to him during his childhood. Dronsfield immediately drove to where [Appellant] lived at her grandparent's house in search of her and the missing jewelry box. However, he was unable to locate her. Later that night and again on the following day, Dronsfield also sent [Appellant] a text message in which he informed [Appellant] that either she must return the items or he would go to the police.

Approximately a week or two later, Dronsfield again attempted to locate [Appellant] at her grandfather's house, and he never received a response from her to his text messages. He then reported the items missing to police and gave a statement to Detective Carlton[2] on September 22, 2015, because no items were ever returned to him.

At trial, Dronsfield testified that at the time of the theft, he believed [Appellant]'s visits were friendly in nature. He also stated that the size of the pocketbook that [Appellant] had with her on each occasion was approximately [eight] inches wide and [eleven] inches in length and was rectangular in shape. Dronsfield described the jewelry box as square in shape, and according to

_____

[2] Detective Carlton's first name does not appear in the certified record.

- 3 -

him, it was smaller than the pocketbook and could have easily fit inside that purse.

The jewelry box contained a wedding band, an engagement ring and signet ring among various other rings inside it, a bracelet, several watches, pins, and cuff links. Many of these items were heirlooms Dronsfield received from family members (some deceased). Dronsfield testified at trial that excluding any sentimental value, the total value of all of the missing items was in excess of $15,000[.00]. His testimony on the value of the items was consistent with his testimony at the preliminary hearing and with the statement he gave to Detective Carlton. Based on his police statement and testimony at trial and the preliminary hearing, Dronsfield's estimations constructed a range from $2,000[.00] minimally, to upwards of $15,000[.00], in his consistent valuations of all of the items.

Defense counsel attempted to establish an alibi and impeach Dronsfield with [Appellant]'s records of her incarceration from August 31, to September 4, of 2015, and September 9, 2015, to February 23, 2016, as stipulated. Nevertheless, the trial court found that Dronsfield was credible and that his testimony was consistent with his preliminary hearing testimony and statements in his police interview. At all times, Dronsfield stated that [Appellant]'s visits occurred on or about late August and early September, even though he was unable to recall the exact dates on which [Appellant] visited and the crimes occurred, as he candidly admitted. Moreover, [Appellant] introduced no evidence of motive or bias on the part of Dronsfield to fabricate his testimony.

(Trial Court Opinion, 5/02/17, at 1-4) (record citations and footnotes omitted).

Following a bench trial on June 10, 2016, the trial court convicted Appellant of the aforementioned offenses. On December 16, 2016, after receipt of a Pre-Sentence Investigation Report (PSI), the trial court sentenced Appellant to an aggregate term of incarceration of not less than three nor more than six years to be followed by a one year term of probation. On

December 27, 2016, Appellant filed a post-sentence motion, which the trial court denied on January 9, 2017. The instant, timely appeal followed. On February 14, 2017, the trial court directed Appellant to file a concise statement of matters complained on appeal. *See* Pa.R.A.P. 1925(b). After being granted several extensions of time, Appellant filed a timely Rule 1925(b) statement on March 8, 2017. *See id.* On May 2, 2017, the trial court issued an opinion. *See* Pa.R.A.P. 1925(a).

On appeal, Appellant raises the following questions for our review:

A. Was the evidence insufficient to sustain the guilty verdicts where there was insufficient evidence to prove that the stolen jewelry was worth more than $2,000[.00] or that it was the [A]ppellant who stole the jewelry?

B. In addition to the foregoing reasons, were the verdicts against the weight of the evidence where the complaining witness' testimony was not credible due to material inconsistencies and where the [A]ppellant was incarcerated at the time the theft took place?

[C.] Did the [trial] court abuse its discretion by fashioning a sentence that greatly exceeded that which is necessary to protect the public as [A]ppellant was convicted of non-violent crimes and is a non-violent offender, and where the court failed to properly consider [A]ppellant's familial support, being the mother of a young child, and need for rehabilitation?

(Appellant's Brief, at 7, 16).

In her first issue, Appellant claims the evidence was insufficient to sustain her conviction. Specifically, Appellant claims that the Commonwealth failed to prove that the jewelry was worth more than $2000.00, and that it was Appellant who took the items. (*See id.* at 10). We disagree.

Our standard of review for sufficiency of the evidence claims is well settled:

We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, **when viewed in a light most favorable to the Commonwealth as verdict winner**, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Tarrach*, 42 A.3d 342, 345 (Pa. Super. 2012) (citation omitted) (emphasis added).

Prior to addressing the merits of Appellant's claim, we must determine if it is properly before us. Here, Appellant's argument is undeveloped. Her argument consists of approximately two pages of general boilerplate law, which does not include the elements of the crimes, and a single, brief paragraph of actual argument. (*See* Appellant's Brief, at 10-13). Further, Appellant's argument disregards our standard of review, which requires that we view the evidence in a light most favorable to the Commonwealth as verdict winner, because Appellant only discusses the evidence in the light most favorable to her and ignores all other evidence. (*See id.* at 12). Appellant

overlooks the fact that this Court does not re-weigh the evidence, nor do we engage in credibility determinations. (*See id.*). Moreover, Appellant fails to cite to any relevant legal authority in support of her propositions. (*See id.*). Accordingly, Appellant has waived her sufficiency of the evidence claims. **See Commonwealth v. Liston**, 941 A.2d 1279, 1285 (Pa. Super. 2008) (*en banc*), *affirmed in part and vacated in part*, 977 A.2d 1089 (Pa. 2009); Pa.R.A.P. 2101. In any event, her claims lack merit.

A defendant commits the crime of theft by deception when "he intentionally obtains or withholds property of another by deception." 18 Pa.C.S.A. § 3922(a). We define deception as intentionally: (1) creating or reinforcing a false impression; (2) "prevent[ing] another from acquiring information which would affect his judgment of a transaction;" or (3) fail[ing] to correct a false impression which the deceiver previously created or reinforced[.]" 18 Pa.C.S.A. § 3922(a)(1)-(3). The crime is finished at the time the defendant communicates the intentional deception to the property owner. **See Commonwealth v. Pappas**, 845 A.2d 829, 837 (Pa. Super. 2004), *appeal denied*, 862 A.2d 1254 (Pa. 2004). Circumstantial evidence can be sufficient to prove any or all of the elements of theft by deception. **See Commonwealth v. Quel**, 27 A.3d 1033, 1037-38 (Pa. Super. 2011).

In order to convict a defendant for receiving stolen property, the Commonwealth must prove: "(1) the property was stolen; (2) the defendant was in possession of the property; and (3) the defendant

knew or had reason to believe the property was stolen." ***Commonwealth v. Foreman***, 797 A.2d 1005, 1011 (Pa. Super. 2002) (citing ***Commonwealth v. Matthews****,* 632 A.2d 570, 571 (Pa. 1993)). We define "receiving" as "acquiring possession, control or title, or lending on the security of the property." 18 Pa.C.S.A. § 3925(b). A person who is the original misappropriator of property can be convicted as the receiver of that property. ***See Commonwealth v. Shaffer***, 420 A.2d 722, 726 (Pa. Super. 1980).

Lastly, "[t]he Commonwealth is not required to establish the precise market value of the stolen property. Rather the Commonwealth must present evidence from which a reasonable jury may conclude that the market value was at least a certain amount." ***Commonwealth v. Reiss***, 655 A.2d 163, 168 (Pa. Super. 1995), *aff'd*, 672 A.2d 784 (Pa. 1996) (citation omitted) (holding that testimony by witnesses as to value of stolen items was sufficient evidence from which jury could make reasonable determination of value of items in question); ***Commonwealth v. Hanes***, 522 A.2d 622, 625 (Pa. Super. 1987) (opining that testimony of owner is admissible to establish market value of stolen property).

In its opinion, the trial court aptly disposed of Appellant's sufficiency of the evidence claim as follows:

> In ***Quel***, [***supra***,] the Superior Court found sufficient evidence that the appellant stole the missing funds from the bank deposit envelopes to satisfy the possession requirement for the "obtain property of another" element under Section 3922(a) where multiple people handled and had access to the deposit envelopes and there was no evidence that anyone saw her remove

the money. [**See Quel**, **supra**,] at 1034, 1038-41. The **Quel** court reasoned that the opportunity of theft as the last individual who handled and had access to the funds established "through an abundance of uncontradicted circumstantial evidence" the appellant's possession of the stolen money that the appellant-bookkeeper intentionally and deceptively removed and withheld from the deposit envelopes that belonged to the school district. [**I**]**d.** at 1041.

In the case at bar, the record established that [Appellant] possessed and withheld from Dronsfield his jewelry box and the items it contained without his permission. Dronsfield's observations of [Appellant] emerging from his bedroom, his discovery of the missing jewelry box, and [Appellant's] rushed departure on the same day confirms that [Appellant] was present in the particular bedroom where the items disappeared from on the day of the theft or about that time. The fact that Dronsfield was living alone, was the only person with a key to the property, and that [Appellant] was the only guest who visited him and had four opportunities to steal from his house since she had a purse with her in the upstairs of Dronsfield's house on all of her visits, are strong circumstantial evidence that further corroborates that [Appellant] removed the jewelry box because she was the only non-resident with access to it and who was at the house at the time of the theft regardless of which visit it actually occurred.

The renewal of any past friendship with the complainant by [Appellant], and the claim that [Appellant] needed to utilize the bathroom with her pocketbook in tow on every visit to Dronsfield's house were deceitful and false because she utilized these representations to steal his items. On or about late August and September 2015, [Appellant] appeared on four occasions at Dronsfield's house where she acted as though it was her intention to befriend him. [Appellant's] greeting to Dronsfield of "Hello neighbor" on her first visit demonstrates her intent to create the impression of friendship, and her subsequent visits and actions over the course of that period reinforced that false impression in Dronsfield's state of mind as to her intention and reason for her visits. While acting as a friend to Dronsfield, she caused him to be relaxed in permitting her entry to his house and access to the upstairs area inside it. As a result of her false representations, [Appellant's] deception caused her to obtain the items that belonged to Dronsfield while at his house. Her deceitful acts are further substantiated by the fact that [Appellant], who had never

- 9 -

before visited Dronsfield, within four subsequent visits acquired his items without his permission or with no intent to return them despite his multiple attempts to contact her.

Based upon the foregoing evidence, there is more than sufficient evidence to prove beyond a reasonable doubt that [Appellant] intentionally obtained Dronsfield's property by deception.

\* \* \*

In the matter at hand, [Appellant] is the misappropriator and receiver of the stolen items because she unlawfully obtained and retained the jewelry box and its contents that all belonged to Dronsfield. For the same reasons as stated above concerning the conviction for theft by deception, there is sufficient evidence to support [Appellant's] conviction for receiving stolen property.

\* \* \*

Lastly, [Appellant's] assertion that there was no evidence to prove the value of the stolen jewelry exceeded $2,000[.00], is incorrect because the Commonwealth presented evidence that surpassed that value that [Appellant] never refuted. Theft by deception and receiving stolen property are graded as a felony of the third degree when the amount involved exceeds $2000[.00]. **See** 18 Pa.C.S.A. § 3903(a.1). Based upon Dronsfield's uncontroverted testimony that the value of all the items stolen from his house was approximately $15,000[.00], [Appellant's] conviction was properly graded as a felony of the third degree.

(Trial Ct. Op., at 6-10).

Here, the evidence at trial, as summarized above by the trial court, clearly demonstrated that Appellant, under the guise of befriending Dronsfield, tricked her way into his home on several occasions, ultimately stealing a jewelry box containing over $2,000.00 worth of jewelry, which she refused to return to Dronsfield. This evidence was clearly sufficient to sustain Appellant's

convictions. *See Quel*, *supra* at 1038-41; *Reiss*, *supra* at 168; *Shaffer*, *supra* at 726. Appellant's first claim is both waived and lacks merit.

In Appellant's second claim she argues that her conviction was against the weight of the evidence. (*See* Appellant's Brief, at 13-14). Specifically, in her two sentences of argument, Appellant claims that "the complainant's testimony varied greatly as to when the theft actually took place, claiming anywhere between the end of August 2015 to September 22, 2015. Additionally, the [A]ppellant [claims that she] was incarcerated at the time this theft took place." (*Id.* at 14). We disagree.

Our scope and standard of review of a weight of the evidence claim is as follows:

> The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses.
>
> As an appellate court, we cannot substitute our judgment for that of the finder of fact. Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when the figure of Justice totters on her pedestal, or when the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience.
>
> Furthermore, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Boyd*, 73 A.3d 1269, 1274-75 (Pa. Super. 2013) (*en banc*) (citation and quotation marks omitted). "Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." *Commonwealth v. Diggs*, 949 A.2d 873, 879-80 (Pa. 2008), *cert. denied*, 556 U.S. 1106 (2009) (citation omitted).

Here, the trial court rejected Appellant's weight of the evidence claim. In its Rule 1925(a) opinion, the trial court explained that as the finder of fact, it found that Dronsfield was credible:

> because the minor discrepancies between his police statement, preliminary hearing testimony, and trial testimony were neither contradictory nor rendered impossible the evidence presented. . . . [H]is credible and consistent testimony established the time period of the theft, during which [Appellant] was not incarcerated and committed it, and the value of the stolen items. In light of the overwhelming evidence discussed above, the verdict was not contrary to the evidence, nor would it shock the conscience.

(Trial Ct. Op., at 9-10).

We agree. The record reflects that the trial court sitting as finder-of-fact chose to credit the testimony of the Commonwealth's witnesses and chose to reject the defense witnesses. The finder-of-fact was free to believe the Commonwealth's witnesses and to disbelieve the defense. ***See Commonwealth v. Griscavage***, 517 A.2d 1256, 1259 (Pa. 1986). Thus, Appellant's weight of the evidence claim is without merit.

In her third issue, Appellant challenges the discretionary aspects of her sentence.[3] Specifically, she maintains that the trial court's sentence was "significantly greater than what was needed to protect the public and vindicate the impact on the victim, and did not truly take into consideration many mitigating factors." (Appellant's Brief, at 17; *see id.* at 18-21). We disagree.

The right to appeal the discretionary aspects of a sentence is not absolute. ***See Commonwealth v. McAfee***, 849 A.2d 270, 274 (Pa. Super. 2004), *appeal denied*, 860 A.2d 122 (Pa. 2004). When an appellant challenges the discretionary aspects of the sentence imposed, he must present "a substantial question as to the appropriateness of the sentence[.]" ***Commonwealth v. Anderson***, 830 A.2d 1013, 1017 (Pa. Super. 2003) (citations omitted). An appellant must, pursuant to Pennsylvania Rule of Appellate Procedure 2119(f), articulate "a colorable argument that the sentence violates a particular provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing scheme."[4] ***Commonwealth v. Kimbrough***, 872 A.2d 1244, 1263 (Pa. Super. 2005) (*en banc*), *appeal denied*, 887 A.2d 1240 (Pa. 2005) (citation omitted); ***see***

---

[3] We note that Appellant preserved her discretionary aspects of sentence claim by filing a timely post-sentence motion for reconsideration of sentence. ***See*** (Post-Sentence Motions, 12/27/16, at unnumbered pages 7-9); ***see also Commonwealth v. McAfee***, ***infra*** at 275.

[4] Appellant has included a Rule 2119(f) statement in her brief. (***See*** Appellant's Brief, at 15).

- 13 -

Pa.R.A.P. 2119(f). If an appellant's Rule 2119(f) statement meets these prerequisites, we have found that a substantial question exists. ***See Commonwealth v. Goggins***, 748 A.2d 721, 727-28 (Pa. Super. 2000) (*en banc*), *appeal denied*, 759 A.2d 920 (Pa. 2000). "Our inquiry must focus on the **reasons** for which the appeal is sought, in contrast to the **facts** underlying the appeal, which are necessary only to decide the appeal on the merits." ***Id.*** at 727 (emphases in original).

Here, Appellant claims that her sentence was harsh and excessive, that the trial court failed to consider the mitigating circumstances and her rehabilitative needs, and failed to provide sufficient reasons for sentencing her outside the guideline range. (***See*** Appellant's Brief, at 18-21). These contentions raise a substantial question. ***See Commonwealth v. Johnson-Daniels***, 167 A.3d 17, 27 (Pa. Super. 2017), *appeal denied*, 174 A.3d 1029 (Pa. 2017); ***see also Commonwealth v. Rodda***, 723 A.2d 212, 214 (Pa. Super. 1999) (*en banc*).

Our standard of review is settled.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Gonzalez***, 109 A.3d 711, 731 (Pa. Super. 2015), *appeal denied*, 125 A.3d 1198 (Pa. 2015) (citation omitted).

Appellant complains that the sentencing court sentenced her outside the guidelines without placing sufficient reasons on the record. (**See** Appellant's Brief, at 20-21). We have stated that:

> When evaluating a challenge to the discretionary aspects of sentence . . . it is important to remember that the sentencing guidelines are advisory in nature. If the sentencing court deems it appropriate to sentence outside of the guidelines, it may do so as long as it offers reasons for this determination. [O]ur Supreme Court has indicated that if the sentencing court proffers reasons indicating that its decision to depart from the guidelines is **not unreasonable**, we must affirm a sentence that falls outside those guidelines.
>
> A sentencing court, therefore, in carrying out its duty to impose an individualized sentence, may depart from the guidelines when it properly identifies a particular factual basis and specific reasons which compelled [it] to deviate from the guideline range.

*Commonwealth v. Schull*, 148 A.3d 820, 836 (Pa. Super. 2016) (citations and quotation marks omitted, emphasis in original).

Here, the trial court had the benefit of a PSI, a mental health report, and a sentencing memorandum from the Commonwealth. (**See** N.T. Sentencing, 12/16/16, at 4-5). It acknowledged that Appellant had both mental health and drug and alcohol issues. (**See id.** at 26). The court specifically noted that Appellant committed the instant offense while under supervision. (**See id.** at 11). Further, the trial court expressed its concerns that, while the sentencing guidelines accounted for Appellant's prior record, it did not account for the fact that she committed at least seven identical

offenses, always against elderly victims, several of them in their nineties. (*See id.* at 17, 25-26). Immediately prior to imposing sentence, the trial court explained, in detail, the basis for the sentence. (*See id.* at 25-27).

Therefore, Appellant's claim that the sentencing court abused its discretion in sentencing her outside the guidelines without expressing sufficient reasons on the record is meritless. *See Commonwealth v. Walls*, 926 A.2d 957, 966-68 (Pa. 2007) (so long as trial court imposed individualized sentence that was reasonable there was no abuse of discretion); *Commonwealth v. Davis*, 737 A.2d 792, 799 (Pa. Super. 1999) (affirming sentence outside guidelines where trial court was informed of PSI, heard testimony, and allowed defendant to speak before imposing sentence); *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. Super. 1988) (finding statement of reasons sufficient where trial court had PSI and was presumed to have been aware of and weighed defendant's history, character, and mitigating factors).

Further, we reject Appellant's claim that the sentence was excessive because the trial court did not consider mitigating factors or her rehabilitative needs. Here, as discussed above, the trial court had the benefit of the PSI, a mental health evaluation, and a sentencing memorandum. The trial court explained, in detail, its reasons for imposing the sentence. Clearly, the gist of Appellant's argument is not that the sentencing court did not consider the relevant sentencing factors, but rather that the court did not weigh them as

much in her favor as she wished. Our review of the record does not show that the sentencing court abused its discretion or that it entered a manifestly unreasonable sentence. *See Commonwealth v. Zeigler*, 112 A.3d 656, 662 (Pa. Super. 2015) (holding sentence not manifestly unreasonable where sentencing court considered PSI, details of crime, and explained reasons for sentence); *see also Commonwealth v. Treadway*, 104 A.3d 597, 600 (Pa. Super. 2014) (holding that sentence of not less than one hundred nor more than two hundred years not manifestly excessive in light of defendant's conduct of child molestation). Appellant's claim lacks merit.

Accordingly, for the reasons discussed above, we find that Appellant's issues are either waived or lacking in merit. Therefore, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/27/18